### KOHLER et al. v. UNITED IRR. CO.
(No. 6394.)

(Court of Civil Appeals of Texas. San Antonio. May 12, 1920.)

1. Waters and water courses ⬅⟹257(1)—Remedy for excessive rates by water engineers is by action and not appeal.

Landowners entitled to water rights under contract with irrigation company had no right to appeal from decision of board of water engineers fixing rates, to district court of county in which the irrigation system was located, Acts 35th Leg. (1917) c. 88, § 62 (Vernon's Ann. Civ. St. Supp. 1918, art. 5002i) having no application to such an appeal, in view of sections 56 and 59 (sections 5002c, 5002f); their remedy, under section 61a, as added by Acts 35th Leg. 4th Called Sess. (1918) c. 55, being a suit in district court of Travis county to set aside the rates so fixed.

2. Appeal and error ⬅⟹170(2)—Parties having invoked act in petition cannot assert unconstitutionality on appeal.

Parties who not only failed to plead the unconstitutionality of an act, but invoked the benefit of act by their petition, cannot complain of unconstitutionality of the act for first time on appeal.

Appeal from District Court, Hildalgo County; V. W. Taylor, Judge.

Proceedings before Board of Water Engineers of the State of Texas by George W. Kohler and others against the United Irrigation Company. From decision of the board, petitioners appealed to district court. Judg-ment of dismissal, and petitioners appeal. Affirmed.

Seabury & George, of Brownsville, and George P. Brown, of Edinburg, for appellants.

D. F. Strickland, of Mission, Glasscock, McDaniel & Bounds, of McAllen, and Andrews, Streetman, Logue & Mobley, of Houston, for appellee.

MOURSUND, J. On April 14, 1919, George W. Kohler and many others filed a petition in the district court of Hidalgo county, and that the petitoiners owned land, company. They alleged that the said company owned an irrigation system in Hidalgo county, and that the petitioners owned land, contiguous and adjacent to the canals and laterals, and had for several years irrigated with water from said system; that in addition they own and hold rights under certain water contracts, providing for compensation to the company by means of a flat rate, to be collected from all who hold contracts, without regard to whether water is taken or not, and a water rate, to be paid for water used. It was further alleged that these rates were to be fixed by the company for a period of five years or less, subject to change by the company at the end of any fiscal year; that all rates so fixed were to be just and reasonable, without discrimination, and figured on a basis stated in the contract and set out in the petition; that the contracts further provided that the flat rate for the period of five years from and after October 1, 1916, was never to exceed the sum of $4 per acre for a fiscal year, and provided a classification of the lands to be irrigated. It was then alleged that the company had from time to time fixed rates, and that prior to October 1, 1918, a flat rate of $4 and a water rate of $2 per acre had been in force; that about August 31, 1918, the company promulgated a flat rate of $5 per annum and a water rate of $3 per acre for irrigation, and in connection with such changes promulgated a new set of rules and regulations, and proposed to enforce all of the same from and after October 1, 1918, the beginning of a new fiscal year; that afterwards the company fixed the water rate at $3 per 90 minutes per head of water; that on or about September 30, 1918, the petitioners, with others, acting through a voluntary association formed by them under the name of the "Water Users Association" of Mission and Sharyland presented to the board of water engineers of the state of Texas, their petition, setting up their rights to water and attacking the rates thus promulgated as unjust, unreasonable, and discriminatory, and also attacking the rules and regulations, and praying for a modification and change of such rates and rules. In this connection it was alleged and shown that

all requirements of the statute necessary to vest said board with jurisdiction to hear and determine the matters were complied with. It was then alleged that the cause was set for hearing by said board, and continued to November 7, 1918, and at said time the individual petitioners made themselves parties; that before the completion of the hearing by agreement that part of the complaint relating to the flat rate was withdrawn, this agreement embracing a waiver by the company of any right or claim it might have to an increase of the flat rate at said time; that on February 18, 1919, the board rendered its decision, fixing the water rate at $4 per acre per irrigation, and providing that the volume of water that could be taken in one irrigation was four inches per acre, and the time limit for each irrigation should be 90 minutes. It was then alleged in detail that in arriving at such decision the board erroneously took into consideration items covered by the flat rate, concerning which there was no controversy, and that the rate fixed was excessive, unjust, and unreasonable for other reasons based upon valuation and income; also that the restrictions relating to delivery of water were unreasonable and impracticable, and their effect was to indirectly grant a further increase of 50 per cent. in the rate. After stating fully the grounds relied on to show the unreasonableness of the rate and rules, the petition recites that the plaintiffs now appeal from said decision, filing the petition as their notice in writing of such appeal, and tendering therewith their appeal bond, and praying that after due notice and proceedings as required by law the court do try de novo the case here submitted, and upon final hearing do grant petitioners a judgment "reversing, setting aside, and for naught holding" the said decision and order of the board of water engineers, and fixing and determining a fair, just, and equitable water rate, "based upon the actual and necessary cost of operating said irrigation system and of procuring and delivering the water, as required by the terms of said water contract, without injecting therein any other considerations, and without attaching thereto any new or unreasonable conditions of water service which would in effect increase such rate." They then prayed specifically for a water rate "for the fiscal year commenced October 1, 1918, and thereafter, until set aside in a proper and legal way of $1.50 per acre per irrigation, for a refund of all moneys in excess of such proper water rate as they may show themselves entitled to upon the trial," for costs and general relief.

The company filed a plea in abatement and motion to dismiss, based on the theory that the appeal must be taken to the district court of Travis county, and that in addition the bond was defective. This plea was sustained, and the cause dismissed.

There can be no doubt that the petition was drawn upon the theory that an appeal was authorized to be taken from the order or decision of the board to the district court of Hidalgo county. The act of the Thirty-Fifth Legislature, chapter 88, regular session (Vernon's Ann. Civ. St. Supp. 1918, arts. 4991–5011½w), contains provisions authorizing appeals in certain cases. The petitioners rely on section 62 of said act (section 5002i) for the right of appeal, but when that section is considered in connection with sections 59 and 56 (sections 5002f, 5002c) it becomes evident that the decision from which the appeal was permitted was one from a hearing upon a petition by persons who have no contract for water, but by reason of being owners of a possessory right to land adjoining or contiguous to the canals are entitled to water not contracted to others. No such decision by the board is involved in this case.

[1] While the caption of said act of 1917 contains no provision evidencing an intention to authorize the board to fix and determine rates upon such an application, or any other application, it appears that the caption of the act of 1913 (Gammel's Laws, vol. 16, p. 358) shows that at the time the provisions embraced in sections 56 and 59 were originally enacted, the Legislature regarded them as conferring authority, not only to require the delivery of water not contracted to others, but also to establish and regulate the rates to govern in such cases. In the case of Knight v. Oldham, 210 S. W. 567, the court so construed the provision contained in the act of 1913 (Laws 1913, c. 171 [Vernon's Sayles' Ann. Civ. St. 1914, art. 5002e]), which was copied into the act of 1917 as section 59. The act of 1917 repealed the act of 1913. The same Legislature which passed the act of 1917 during its fourth called session passed an act amending the said act of 1917, known as chapter 88, by adding certain sections. See chapter 55, Acts 4th Called Sess. 35th Leg. In the emergency clause it was recited that—

"There is now no law authorizing the fixing of rates for furnishing water and permitting furnishers of water to apply for a review and revision of orders, rates and decrees."

This act specifically conferred the power and authority upon the board of water engineers to fix reasonable rates, and provided that any person at interest may file a petition in a district court of Travis county against the board as defendant, setting forth the objections to the decision made or rule or rate promulgated by the board. In drawing the bill the language of Rev. St. 1911, arts. 6657, 6658, relation to attacks upon rates and rules of the Railroad Commission, was used in so far as it could be made applicable to the fixing of water rates, rules, etc. Under the terms of the act the burden is placed upon the plaintiff to show, by clear and satisfactory evidence, that the rates, regulations, or orders complained of are unreason-

able and unjust to him. By inserting in the act of 1917 (chapter 88) the provisions of said act passed at the special session, at the places where by reason of section number they naturally belong, some doubt is created whether the provision for an appeal contained in section 62 was made applicable to a decision establishing rates made under the provision inserted as section 61a. However, it is inconceivable that the Legislature actually intended to make the right of appeal provided for in section 62 apply to a decision under section 61a, for if it did so a peculiar situation would be brought about. By appealing, instead of suing the board in the district court of Travis county, the provision concerning the burden of proof could be evaded. We have arrived at the conclusion, from a consideration of the several statutes, that the Legislature intended to make the rates and rules promulgated by the board of water engineers conclusive unless set aside in an action brought in a district court of Travis county, and that the statutes can, and therefore must, be construed so as to effectuate such intention. It, therefore, follows that we also conclude that the statutes do not bestow any right to appeal to the district court of Hidalgo county from the decision of the board of water engineers, of which complaint was made in the petition.

[2] Appellants, however, as their first assignment of error, present another theory upon which they hope to sustain the jurisdiction of the district court of Hidalgo county, and that is that the petition should be held sufficient as an original suit, and, being brought in the district court of the domicile of the appellee, the court should have tried the case. This theory is presented apparently as an afterthought, for the petition does not purport to present in the alternative an original suit, nor is a request made for relief by injunction against the enforcement of the rates, and it is evident that no cause of action entitling the petitioners to have the rates attacked by them adjudged unreasonable by the district court of Hidalgo county can be stated in a petition except upon the theory that the act of the Legislature, bestowing upon the board of water engineers the power and duty of fixing and establishing rates, is void. The appellants recognize this fact in their brief, and therein attack the act as in violation of the constitutional inhibition against the delegation of legislative power, but are in the embarrassing position, as it appears to us, of not only having failed to plead that said act was unconstitutional, but, on the contrary, of having shown by their petition that they invoked the benefit of said act, and that the situation now complained of was brought about because the board, although entertaining their petition and affording them a trial, failed to render a decision such as was desired by them. Having used

the provision of the statute to procure a decision or order fixing rates, the plaintiffs are precluded from contending that such provision is unconstitutional, if indeed they can be heard to so contend for the first time on appeal. Cooley on Constitutional Limitations (7th Ed.) pp. 251, 252; 12 Corpus Juris, p. 769, § 190, Section 199, p. 773; Wall v. Parrot, etc., 244 U. S. 407, 37 Sup. Ct. 609, 61 L. Ed. 1229; Great Falls Mfg. Co. v. Garland, 124 U. S. 581, 8 Sup. Ct. 631, 31 L. Ed. 527; Daniels v. Tearney, 102 U. S. 415, 26 L. Ed. 187; Lewis v. Chamberlain, 69 Or. 476, 139 Pac. 571; State v. Boston & Maine R. R., 75 N. H. 327, 74 Atl. 542; Regan v. Dickmann, (Mo.) 207 S. W. 792.

In view of this conclusion, it is unnecessary to consider the question of the constitutionality of the statute.

It is also contended in the brief that the decision of the board had the effect of impairing the obligation of plaintiff's contracts, and to deprive them of their property without due process of law. No such grounds of attack were pleaded, but, aside from this, as we have held that the statute authorizing the board to fix rates cannot be attacked by plaintiffs, it follows that the objections now under consideration could only be presented in a suit instituted in the court designated by the statute as the one in which the rates can be reviewed.

We conclude that the judgment dismissing the case should be affirmed.