**TEXAS WATER RIGHTS COMMISSION et al., Appellants,**

v.

**CITY OF DALLAS, Texas, Appellee.**

No. 12982.

Court of Civil Appeals of Texas, Austin.

Dec. 5, 1979.

Rehearing Denied Jan. 2, 1980.

Mark White, Atty. Gen., Sam Graham, Asst. Atty. Gen., Austin, for Texas Water Rights Commission.

Frank R. Booth, Booth, Lloyd & Simmons, Austin, for City of Farmers Branch.

Lee E. Holt, City Atty., Carroll R. Graham, Asst. City Atty., Dallas, and James W.

Wilson, Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, for appellee.

O'QUINN, Justice.

The controlling issue in this lawsuit is whether the Texas Water Rights Commission has jurisdiction to determine rates charged for water supplied, absent any contract, by a municipality, in this case the City of Dallas, when engaged in selling water beyond its corporate limits to another municipality.

Beginning sometime after 1950, the City of Dallas entered into contracts with certain municipalities, suburbs of Dallas, under which Dallas agreed to supply the cities from its reservoirs with treated water which was surplus to the then current needs of the City of Dallas. Such contracts were made with the City of Farmers Branch, in January of 1951, and with the City of Grand Prairie, in January of 1955. The original contracts and their extensions expired, after which Dallas and the two cities named failed to reach agreements as to rates to be charged. No contractual relationship exists at present between Dallas and either of the two cities for supply of municipal water.

After the parties failed to reach an agreement by which Dallas would supply water, the City of Farmers Branch, in April of 1973, filed a petition with the Texas Water Rights Commission, seeking to invoke the Commission's jurisdiction under Sections 5.041 and 6.056 of the Texas Water Code. The Farmers Branch petition alleged that the contract tendered by Dallas to Farmers Branch, and the rates demanded under it, were unreasonable, unjust, and discriminatory, and sought an order from the Water Rights Commission fixing rates and prescribing contract terms. Thereafter, in October of 1973, Grand Prairie filed its petition with the Commission to intervene and obtain similar relief.

The Water Rights Commission retained jurisdiction, over objection from the City of Dallas, and after hearings, entered its final order in April of 1977. The Commission ordered Dallas to supply the contesting municipalities with water, and established water rates for the years 1973 and 1974, with rates for 1975 and 1976 to be determined after further hearings. Subsequent to entry of the order, the Commission proceeded to hear further rate controversies, arising between the parties, for the years 1977, 1978, and beyond. At the present time Dallas continues to supply Farmers Branch and Grand Prairie with water service, but without contract.

From the Commission's order, the City of Dallas appealed to district court pursuant to Section 19, Article 6252–13a (Texas Administrative Procedure Act) and Section 6.101, Texas Water Code. The principal contentions made by Dallas under its pleadings in district court were that (1) the Commission lacked jurisdiction of the parties and the subject matter; (2) the Commission erred in holding that the rates charged were unreasonable and unjust; (3) the order of the Commission would divest property and contract rights belonging to Dallas, in violation of Section 19 of Article I, Texas Constitution; (4) the order violated constitutional and statutory provisions; (5) the order was not reasonably supported by substantial evidence; and (6) the order was arbitrary and capricious. In addition, Dallas made numerous objections to procedural propriety of the order.

The trial court consolidated the appeal by the City of Dallas with an appeal from the Commission's order by Farmers Branch. Thereafter, in May of 1978, the City of Dallas filed motion for summary judgment on the grounds that (1) the Commission lacked jurisdiction, under Sections 5.041 and 6.056 of the Water Code, to compel service or fix rates for service from a city's municipal water system and (2) the Commission had jurisdiction, if any, only to fix rates prospectively, and could not order rebates or refunds.

The trial court sustained the motion for summary judgment and entered judgment setting aside the order of the Texas Water Rights Commission relating to rates for water service by the City of Dallas, as being beyond the Commission's statutory jurisdic-

tion, and ordered the petitions of Farmers Branch and Grand Prairie dismissed. We will reverse the judgment of the trial court and remand the cause for trial on the merits.

The record shows that for many years the City of Dallas has owned and operated a municipal water system for the purpose of providing a water supply to its inhabitants, and since about 1880 Dallas has utilized surface water sources for this purpose. At all periods pertinent to this suit the entire municipal water supply of Dallas has consisted of surface water appropriated by the City and diverted under permits granted by the Commission or by its predecessor State agencies.

Over the challenge of the City of Dallas to the Commission's jurisdiction, the Commission issued its final order in April of 1977. There the Commission found that Farmers Branch and Grand Prairie were members of a group of eighteen cities, situated in Dallas County, which purchase water from the City of Dallas. Dallas holds permits to use the waters of the State by and through the authority of the Texas Water Rights Commission, or its predecessors, and has represented in obtaining some of such permits that Dallas would supply water to municipalities located in Dallas County. The Commission expressly found that "Permits have been granted to Dallas based upon this representation." The record shows that the City of Dallas has water available to supply its own inhabitants and all of its customer cities at least until the year 1995.

The City of Dallas represented to the Commission that it would provide water to Dallas County cities at its cost. In 1972 Dallas realized a return of 7.20 percent of the fair value of plant devoted to the service of its customer cities. The Commission found that the realized return was unreasonable to the extent that the return exceeded six percent of the fair value rate base.

The Commission reached a conclusion of law that the Commission had jurisdiction, under Sections 5.041 and 6.056 of the Code,

". . . to determine the reasonableness of rates and to fix the rates for any purposes mentioned in Chapters 5 and 6 of the Water Code. By its acceptance of permits for the use of the State's water, Dallas has subjected itself to the jurisdiction of the Commission and all of the powers granted to it by the legislature and the Constitution."

Conclusions of law 4 and 5 of the Commission were:

"4. Farmers Branch and Grand Prairie are persons entitled to receive water within the meaning of Section 5.041, Texas Water Code, and are entitled to receive water based upon representations made by Dallas to the Commission prior to the granting of certain permits to appropriate waters of the State. These representations are binding upon the water supplies held under permits previously granted to Dallas by this Commission.

"5. Dallas has conserved or stored water in reservoirs under permits issued by the Commission and its predecessors which is in excess of Dallas' projected use in the year 2050, which is not contracted to others and which is available for . . . use."

Farmers Branch as appellant brings three points of error asserting the trial court erred in granting summary judgment because (1) the Commission had jurisdiction to set rates for uncontracted water service under authority of Section 5.036 of the Code; (2) Sections 5.041 and 6.056 of the Code provide statutory grounds for the Commission to exercise authority over water sales by Dallas outside its corporate boundaries; and (3) the Commission maintains jurisdiction to compel service and set reasonable rates for water service by Dallas to Farmers Branch under permits issued to Dallas under the Texas Water Code "due to Dallas' public utility status and Farmers Branch's entitlement to Dallas water service at reasonable, non-discriminatory rates."

The Commission as appellant brings similar points of error. By counterpoints the City of Dallas as appellee urges that the

Commission lacked jurisdiction to entertain the petitions for fixing of rates and "the only effect of the order [of the Commission] is to order rebates, and the Commission did not have rate rebate jurisdiction." By reply the appellants join issue on both counterpoints brought by appellee.

■ Both appellants urge that the Commission had jurisdiction under Section 5.036 of the Code to set rates for uncontracted water service by Dallas to its customer cities. Dallas argues in reply that Section 5.036 is ". . . part of a series of obscure statutory provisions governing water use which had their origin in the 1913 Irrigation Act," and is not applicable to the kind of water service supplied by the City of Dallas.

Section 5.036 provides that persons, corporations, or districts ". . . having in possession and control any storm water, floodwater, or rainwater that is conserved or stored as authorized by this chapter may contract to supply the water to any person, association of persons, corporation, or water improvement or irrigation district having the right to acquire use of the water." The statute provides in subsection (b): "If any person uses the stored or conserved water without first entering into a contract with the party that conserved or stored it, the user shall pay for the use at a rate determined by the commission to be just and reasonable, subject to court review as in other cases."

In the trial court Dallas directed its attack on jurisdiction with reliance upon Sections 5.041 and 6.056, without mention of Section 5.036, and the trial court's grant of motion for summary judgment was effected without mention of Section 5.036. Dallas concedes that the issue as to application of Section 5.036 was before the trial court in the statement: "The question was the subject of oral argument before the trial court, and it is met in the trial court's letter opinion."

Although we are aware of the provisions of Rule 166–A(c) that "Issues not expressly presented to the trial court by written motion, *answer or other response* shall not be considered on appeal as grounds for reversal," (emphasis added) we conclude that this Court may consider the points of error under which the issue is raised on appeal.

■ As pointed out earlier, both appellants also contend that Sections 5.041 and 6.056 of the Water Code provide statutory grounds for the Commission to exercise authority over water sales by the City of Dallas outside its corporate limits. Section 5.041 authorizes "[a]ny person entitled to receive or use water from any canal, ditch, flume, lateral, dam, *reservoir*, or *lake*, or from *any conserved or stored supply* may present to the commission a written petition . . ." (Emphasis added). Section 6.056 plainly provides that "The commission *shall fix reasonable rates for the furnishing of water for any purpose mentioned in Chapter 5 or 6 of this code.*" (Emphasis added). The purposes for which State water may be appropriated, stored, or diverted includes, at the outset, water for "domestic and municipal uses, including water for sustaining human life . . ." Section 5.023, Texas Water Code.

Against the position of appellants that Sections 5.041 and 6.056 are controlling, the City of Dallas argues that the only persons entitled to invoke Section 5.041 are those who are entitled to receive or use water from canals, ditches, flumes, lakes and other open means of conserving and storing waters, which would not find application to pipelines maintained by Dallas to effect distribution of water.

In this connection Dallas urges that the provisions of Section 5.041 are the "vestigal remains" of "an ancient irrigation law" applying only to open waterways, and, under the principle of "expression of one thing is exclusion of another," the enumeration of open facilities, suitable to convey or hold raw water, would exclude enclosed pipes delivering treated potable water, such as the Dallas distribution system. The argument appears to be grounded mainly on the contention that the statutes are limited to irrigation waters and do not affect domestic water. We find the contention without merit.

Although at some stages in the evolution of the statutes the laws have been referred to as irrigation laws, it cannot be said that the statutes do not concern subjects other than irrigation. In 1913 the Legislature repealed earlier water laws, primarily applicable to the arid regions of Texas, and adopted a uniform system of water laws for the entire state. In essence the Act of 1913 (Acts 1913, 33rd Leg., ch. 171, p. 358) declared all waters within Texas to be the property of the State, and provided means by which upon application the waters could be appropriated for designated purposes, including "waterworks for cities and towns." (Secs. 2 and 4).

One of the active sponsors of the Act of 1913, Representative D. W. Glasscock, whose district comprised Hidalgo, Starr, and Brooks Counties, in addressing the House in behalf of the measure, clearly stated:

"While known as the 'Irrigation Bill,' it is in fact much more extensive in scope than this term would indicate, and is an effort to form a comprehensive system of statutory 'Water Law' for this State. It deals, not only with the important question of irrigation, in which millions of capital is now invested in this State and upon which many thousands of people are dependent; but also with every right to the use of water; from the *primary use for drinking and domestic purposes, the supply of cities and towns*, the natural use for stock raising, the uses for mining, the development power, and other purposes; up to the problem of conservation of this great natural resource, and its control, application and use, to the benefit of all people of this State." (Emphasis added). (House Journal, 1913, pp. 949–950).

Sections 60 through 63 of the Act of 1913, dealing with "Regulation of Rates," are the obvious early forebears of Section 5.041 of the present Water Code. The relevant substantive portions of the Act of 1913 were carried forward in the Act of 1917 (Acts 1917, 35th Leg., ch. 88, p. 211) in Sections 2 and 59. In 1918 the Legislature amended the Act of 1917 to provide, among other amendments, in clear language the extent of the power of the Board of Water Engineers (predecessor of the Water Rights Commission) in rate making:

"The said Board shall have power and authority and it shall be its duty to fix reasonable rates for the furnishing of water for the purposes or any purpose mentioned in this Chapter [referring to Chapter 88, the Act of 1917]." (Acts 1918, 35th Leg., 4th C.S., ch. 55, p. 129, adding Sec. 61–A in Sec. 1).

The addition of Section 61–A in 1918 to the Act of 1917 was placed in the Revised Statutes of 1925 as Article 7563, from which Section 6.056 of the Water Code derives.

Rate making by the Commission and its predecessors has been recognized in *Knight v. Oldham*, 210 S.W. 567 (Tex.Civ.App. El Paso 1919, writ ref'd); *Kohler v. United Irrigation Company*, 222 S.W. 337 (Tex.Civ. App. San Antonio 1920, no writ); and more recently by this Court in *Trinity River Authority v. Texas Water Rights Commission*, 481 S.W.2d 192, 195 (Tex.Civ.App. Austin 1972, writ ref'd n.r.e.). The Supreme Court treated rate making in a controversy involving water for municipal purposes in *City of San Antonio v. Texas Water Rights Commission*, 407 S.W.2d 752 (Tex.1966). In that case the Guadalupe-Blanco River Authority, referred to by the Court as GBRA, held a permit granting it ". . . authority to appropriate, divert and use certain waters of the State as may be necessary when beneficially used for the purpose of municipal use."

There the Supreme Court declared:

"GBRA cannot legally refuse to sell municipal water to any particular municipality. The GBRA is under a duty to serve the public without discrimination. See *Allen v. Park Place Water, Light & Power Co.*, (Tex.Civ.App.1925, err. ref.), 266 S.W. 219. The Texas Statutes, herein discussed, specifically entitled the Water Rights Commission to compel GBRA to furnish municipal water without discrimination. Article 7560 provides that any person entitled to use water from any

reservoir can present a petition to the Commission showing that GBRA has a supply of water not contracted to others and available for his use. Upon such showing and upon the further showing that GBRA has failed and refused to supply such water to him, GBRA can be compelled to deliver such water in accordance with the Commission's order. Not only that, safeguards are statutorily provided in the event GBRA should seek to supply an unreasonable amount of water to any particular municipality, or should seek to fix an unreasonable price for municipal water. The Water Rights Commission is entitled under Article 7563 to fix reasonable rates to be charged by GBRA for furnishing the water for all purposes. . . ." (407 S.W.2d 752, 768).

This Court subsequently, in *Trinity River Authority*, stated the statutory development and present authority of the Commission to fix reasonable rates for furnishing water for any purpose mentioned in Chapters 5 and 6 of the Water Code:

"The rate making authority of the Commission began with its predecessor agency, the State Board of Water Engineers, in 1913 with enactment of Articles 7560, 7561, and 7562, Revised Civil Statutes of 1925, (Acts 1913, 33rd Leg., p. 358, ch. 171, secs. 60, 61, 62) brought forward as Section 5.041 of the Texas Water Code (Acts 1971, 62nd Leg., ch. 58), effective August 30, 1971, V.T.C.A. The rate making jurisdiction was expanded in 1918 when the antecedent statute of Article 7563 was enacted to cover furnishing water for any purpose mentioned in the Irrigation Act of 1917. (Acts 1918, 35th Leg., 4th C.S., p. 129, ch. 55). As brought forward in the Texas Water Code (Sec. 6.056) the statute empowers the Commission to '. . . fix reasonable rates for the furnishing of water for any purpose mentioned in Chapter 5 or 6 of this code.'" (481 S.W.2d 192, 195).

The argument of Dallas that the Commission's rate fixing authority extends only to sales of water by a canal company or irrigation district in supplying water for city waterworks, and does not extend to sales by a city to its customers, fails to take into account the fact that the Dallas customers are themselves municipalities purchasing water for waterworks. Dallas enjoys a substantial monopoly closely resembling that of canal and irrigation entities occupying a monopolistic position. Dallas over a long period of time has secured permits to appropriate State waters which are so extensive as to afford Dallas control of substantially all municipal water supplies in Dallas County.

We find it reasonable to conclude that Dallas has become subject to the statutes, just as the laws apply to irrigation and canal entities, since Dallas furnishes water from "any conserved or stored supply" for the operation of municipal waterworks.

■ We find the contention of the City of Dallas, alternatively, that the order of the Commission was invalid, as one seeking to exercise authority retroactively, without merit. This Court disposed of a similar contention in *United Gas Public Service Company v. State*, 89 S.W.2d 1094 (Tex.Civ. App. Austin 1935, writ ref'd; affirmed, 303 U.S. 123, 58 S.Ct. 483, 82 L.Ed. 702). The essentials of the holding are found in the statement: "The rule is settled that a public utility commission has the power to make its rate order retroactively effective as of any date after it has actually acquired jurisdiction of the cause, and, in consequence, may order the refund of excessive rates paid from and after the retroactively effective date of the order." (89 S.W.2d 1094, 1104, col. 1). The refund order of the Commission was in conformity with this rule.

For the reasons stated, we reverse the judgment of the trial court granting motion of the City of Dallas for summary judgment and dismissing the petitions of appellants. We remand the cause to the district court for trial on the merits.

Reversed and Remanded.