TRPA vs. TNRCC 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00070-CV







Texas Rivers Protection Association and 


William Perkins, Appellants




v.




Texas Natural Resource Conservation Commission and 


Upper Guadalupe River Authority, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 93-15592, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING







 Appellants, Texas Rivers Protection Association ("TRPA") and William Perkins,
complain that appellee Texas Natural Resource Conservation Commission (1) ("the Commission")
improperly granted appellee Upper Guadalupe River Authority ("UGRA") a permit to divert water
from the Guadalupe River at a point near Kerrville, Texas. The Commission accepted a hearing
examiner's proposal to grant the permit, and the district court affirmed the Commission's order. 
Appellants assert various points of error challenging the sufficiency of the evidence supporting
the permit and the Commission's legal authority to issue it. We will affirm the trial court's
judgment.



BACKGROUND


 The City of Kerrville ("the City") is located on the banks of the upper Guadalupe
River. Prior to 1981, the City met all its water needs from a well system drawing groundwater
from the Lower Trinity aquifer. In 1981, the Commission granted a permit ("permit 3505") to
UGRA for the diversion of up to 3603 acre-feet per year of water from the Guadalupe River for
use by the City. UGRA diverts water from a reservoir formed by a dam it operates on the river
at Kerrville. Since 1981, the City has satisfied its water needs primarily from river water diverted
by UGRA. In July 1991, UGRA applied to the Commission for a second permit ("permit 5394")
allowing it to divert an additional 4760 acre-feet of water annually from the river for use by the
City. UGRA plans to immediately use some of the water diverted under the new permit for the
City and store the remainder in the Hosston-Sligo aquifer, which lies directly below the City. 
UGRA decided to use this aquifer storage and recovery ("ASR") technique to avoid the expense
of an artificial reservoir and to prevent the evaporation that attends surface water storage.

 In August 1991, UGRA amended its application for permit 5394 due to revised
population forecasts for the City and Kerr County. Although it requested the same amount of
water as under the original application, UGRA modified the uses to which the water would be put. 
UGRA indicated that some portion of the water would be used to meet the needs of Kerr County
entities other than the City. The amended application noted Kerrville's willingness to become a
regional water supplier. UGRA stated that the water demand from the non-Kerrville portion of
Kerr County justified the level of water it continued to request.

 A Commission examiner conducted extensive hearings on the application between
June 1992 and February 1993. Appellants participated as parties to the administrative hearings
and vigorously challenged the application. Appellants contended that the Texas Water Code and
common law prohibit the ASR plan, that the need for water outside the City was speculative and
therefore that portion of the diversion improper, and that the total rate of diversion proposed by
UGRA would harm their aesthetic, recreational, and business interests in the affected portion of
the Guadalupe River. The examiner recommended that the Commission grant the amended
application, and the Commission issued permit 5394 to UGRA in October 1993.

 The permit as issued by the Commission contains many provisions that vary from
UGRA's application requests. The permit allows UGRA to divert only 4169 acre-feet of water
annually, apportioned as follows: 1100 for Kerrville, 1661 for Kerr County entities other than
Kerrville, and 1408 for injection into the aquifer to assure a constant level of water supply even
in times of drought. The permit also contains significant "flow rate" protections for the river
users downstream of the diversion point. When water is diverted from the reservoir at the UGRA
dam, less water is available to run downstream and the depth and flow speed of the river change. 
The Commission issued permit 5394 with significantly more flow rate restrictions than suggested
by UGRA.



STANDING


 As a preliminary matter, UGRA challenges appellants' standing to seek judicial
review of the permit. The trial court overruled UGRA's plea in abatement on the issue of
standing, and UGRA complains on appeal that the trial court erred in finding that appellants
proved harm or injury from the permit sufficient to confer standing for judicial review.

 The Administrative Procedure Act ("APA") provides that a losing party in a
contested administrative case may, after exhausting administrative remedies, seek judicial review
if the party is "aggrieved" by the agency's action. Tex. Gov't Code Ann. § 2001.171 (West
1995). That a party had standing before the agency does not necessarily mean that it has standing
for judicial review; the right to participate in administrative proceedings is construed quite
liberally to encourage varying points of view. Fort Bend County v. Texas Parks & Wildlife
Comm'n, 818 S.W.2d 898, 899 (Tex. App.--Austin 1991, no writ). In this case, however, the
standing test used by the Commission also satisfies the APA's requirement that the party be
"aggrieved." Commission rules confer standing upon any party with a "justiciable interest in the
matter being considered . . . ." 30 Tex. Admin. Code § 267.1 (1995). The supreme court has
declared that a party is "aggrieved," for purposes of the APA, if the party can show a justiciable
interest in the contested matter. Hooks v. Texas Dep't of Water Resources, 611 S.W.2d 417, 419
(Tex. 1981).

 We find that the record amply supports the determination by the Commission and
district court that appellants have shown a justiciable interest in the permit. The permit, if upheld,
would divert water from the Guadalupe River in derogation of appellants' uses. Both appellant
Perkins and TRPA member Roy Vance own property fronting the affected area of the river, with
attendant riparian rights. Perkins and Vance both testified that the water diversion caused by the
permit would injure their aesthetic and recreational interests in the river. Perkins and TRPA
member Thomas Goynes also conduct canoeing trips on the affected area of the river and testified
that diversion under the permit would harm their business opportunities.

 UGRA argues that these interests are insufficient to show standing since appellants
did not have any particularized "vested" property rights in the river, by which they apparently
mean permits for recreational or business uses of the river. We disagree. Appellants' riparian
ownership alone sufficiently distinguishes their injury from that of the public at large. See Hooks,
611 S.W.2d at 419 (riparian owners with no other property interest in a creek had standing to
challenge permit allowing waste discharge). An injury need not affect "vested" property rights
to confer standing; the harm may be economic, recreational, or environmental. City of Bells v.
Greater Texoma Util. Auth., 790 S.W.2d 6, 11 (Tex. App.--Dallas 1990, writ denied). Because
the record amply discloses potential harm to appellants, we hold that the trial court properly
determined that appellants have standing to pursue judicial review of the permit. (2)



DISCUSSION ON THE MERITS


 Appellants challenge the permit on two grounds: (1) the Commission did not have
the legal authority to issue the permit, and (2) the Commission's findings are not supported by
substantial evidence in the record. We will first consider the questions of law and then turn to
a substantial evidence review.



Questions of law

 In points of error one, two, and five, appellants argue that the ASR method of
water storage violates the Water Code (3) as well as the common law. Assuming a proper use for
the water, appellants concede that the amount of water to be diverted is within the Commission's
discretion and that storage of the water in an artificial container, even below ground, would be
proper. However, appellants contend that the Commission committed legal error by granting the
permit because it allows storage of water in a natural aquifer and because that storage will
recharge the aquifer. See Tex. Gov't Code Ann. § 2001.174(2) (West 1995). UGRA responds
that the Code clearly authorizes the appropriation and storage of surface water for municipal
purposes, and the fact that the water is stored in a natural aquifer and incidentally recharges the
aquifer does not make the permit improper. In an appeal governed by the APA, we exercise de
novo review over questions of law. In re Humphreys, 880 S.W.2d 402, 404 (Tex.), cert. denied,
115 S.Ct. 427 (1994).

 Appellants argue in their first point of error that the permit is invalid because it
contemplates aquifer recharge as one use of the water; they contend that aquifer recharge is not
an authorized beneficial use of state water except as specifically provided in the Code. See Code
§ 11.023. Appellants' argument misses the mark for two reasons: the statute which appellants
cite applies only to the Edwards aquifer, and aquifer recharge is only an incidental use of the
water in the instant permit, not the primary use. By its plain terms, section 11.023(c) applies only
to the Edwards aquifer. Id. Because this appeal does not concern the Edwards aquifer, section
11.023(c) is not applicable.

 Even if the Code could be construed to forbid the diversion of state water to
recharge other aquifers, the permit would still not be invalid since any recharge of the aquifer
would only be incidental to the primary use of the water. The permit appropriates water for
municipal use, and the Code authorizes storage of water for municipal use. Code § 11.023(a)(1). 
By the plain terms of the permit, the purpose of injecting the water into the aquifer is for storage,
with recharge being only an incidental occurrence. Section 11.023(c) of the Code restricts the
circumstances in which water may be appropriated for the primary purpose of Edwards aquifer
recharge. Code § 11.023(c). Even if that provision could be read to apply to other aquifers, it
would not forbid the injection of water into an aquifer for the primary purpose of storage for
municipal use. (4) The incidental recharge contemplated by this permit does not detract from the
primary use of the water for municipal purposes, which the Code prioritizes as the most important
beneficial use of state water. Code § 11.024(1). We overrule appellants' first point of error.

 In their fifth point of error, appellants argue that the permit is invalid because it
lists the water's uses as "municipal and recharge." Appellants argue that storage for the purpose
of recharge is a use separate from municipal use and that storage in itself is not an authorized use
of water. Appellants also argue that the permit is invalid because UGRA's application did not use
the word "recharge" in its description of the ASR procedure, and thus violated permit
requirements under the Code. Both arguments are without merit. The record clearly indicates
that the word "recharge" as used in the permit, describes a side effect of storing water in an
aquifer. Because UGRA's application clearly indicated its intent to store the water in an aquifer,
UGRA complied with the statutory requirement to "state the nature and purposes of the proposed
use and the amount of water to be used for each purpose . . . ." Code § 11.124(a)(4). 
Appellants' attempt to characterize this storage as a use distinct from municipal use is similarly
misplaced. Both UGRA's application and the permit clearly indicate that aquifer storage is
incidental to, and in furtherance of, the municipal use. The water is to be stored for later
municipal needs, as opposed to current needs. The Code clearly allows the storage of water for
later municipal use. Code § 11.023(a)(1). Appellants' fifth point of error is overruled.

 In their second point of error, appellants argue that the permit is improper because
water injected into an aquifer becomes groundwater outside the control of the state. Appellants
contend that the Commission erred in its legal conclusion that the state would retain title to water
injected into the aquifer. Further, appellants contend that the determination of title to the water
is crucial and argue that the Commission cannot issue a permit authorizing the transformation of
state water into groundwater, thereby subjecting the water to the common-law rule of capture
governing groundwater. See, e.g., City of Sherman v. Public Util. Comm'n, 643 S.W.2d 681,
686 (Tex. 1983); Houston & Tex. Cent. Ry. Co. v. East, 81 S.W. 279, 280 (Tex. 1904). We
reject appellants' argument because the beneficial use of water, and not title, controls the legality
of a state water diversion permit.

 The gravamen of appellants' argument is that water cannot be put to beneficial
municipal use, as a matter of law, if it has become groundwater subject to the rule of capture. 
As a general rule, the Code gives the state the right to exclude others from using surface water,
while groundwater is subject to capture by private landowners. See Code §§ 11.021, 52.002. 
However, the right to exclude other users is not the legal touchstone of a diversion permit. The
Code provides that a permit is properly granted if "the proposed appropriation contemplates the
application of water to any beneficial use . . . ." Code § 11.134(b)(3)(A); see also Code
§ 11.023(b) (providing that state water may be appropriated, diverted, or stored for any beneficial
use). Thus, beneficial use is the yardstick by which to measure the legality of a permit. Even if
the state stores water in a manner that negates its right to exclude private takers, a permit will
stand if the water is actually put to a beneficial use. The characterization of stored water as
groundwater subject to the rule of capture does not invalidate a permit as a matter of law. 
Appellants have failed to show, as a factual matter from the record, that the aquifer storage plan
authorized by permit 5394 will prevent beneficial use of the water. Therefore, we hold that the
ASR plan does not invalidate this permit. We overrule appellants' second point of error.

 In their sixth point of error, appellants contend that the permit is invalid because
it does not require diligent construction of diversion and storage facilities, and because it allows
for cancellation of rights to divert any water not subject to a supply contract by the year 2010. 
We disagree. The Code requires that facilities proposed for construction under a direct diversion
permit must be diligently constructed once begun. Code § 11.145(a). However, there is no
requirement that the Commission put particular language in the permit concerning diligence. See
Code § 11.135(b). Furthermore, the statute contemplates facilities that must be constructed to
divert or store the water. Id. In this case, no such facilities are proposed because UGRA already
has a dam in place and the aquifer will be used for storage instead of an artificial reservoir. The
permit calls for the cancellation of the right to divert any portion of water not subject to contract
by 2010, seventeen years after the issuance of the permit. The Code provides that a permit for
water diversion may be cancelled in whole or in part, under certain circumstances, if water is not
used within ten years after issuance of the permit. Code §§ 11.171-.186. The permit provision
is valid because it merely adds a condition to those imposed by statute. If the statutory conditions
are satisfied, the permit will be subject to cancellation in ten years. Even if not, the permit adds
a seventeen-year condition that must be fulfilled in addition to the statutory requirements, not
instead of them. We overrule point of error number six.

 In points of error seven and eight, appellants complain that the permit is invalid
because UGRA derived its right to appropriate water from a superior claimant. UGRA signed
a subordination agreement with the Guadalupe-Blanco River Authority ("GBRA"), in which
GBRA agreed to allow UGRA to use a portion of its water rights. Without this agreement,
UGRA would not be able to divert water under permit 5394. Appellant argues that the permit is
invalid because it purports to grant a perpetual water diversion right, while the subordination
agreement expires in the year 2027. We disagree. The permit clearly states that it is "subject to
all superior and senior water rights in the Guadalupe River Basin." If the subordination
agreement is not renewed, UGRA will no longer have a right under the permit to divert the water. 
Similarly, appellant argues that the permit is invalid because GBRA never modified its permit to
reflect the subordination agreement. We reject the argument because Commission rules require
the amendment urged by appellant only when the contract calls for the seller to "supply" the water
to the buyer by delivery or diversion. See 30 Tex. Admin. Code § 297.101 (1995). The
subordination agreement is not such a "supply" contract because UGRA will divert and transport
the water, not GBRA. GBRA uses its water for hydroelectric power generation but does not
divert it. When water will first be diverted from its course, the party diverting the water must
apply for a new permit. Code § 11.121; 30 Tex. Admin. Code § 297.21 (1995). GBRA did not
need to amend its permit since it does not intend to divert water under the subordination
agreement. UGRA, as the diverting party, properly filed its application for a new permit. Points
of error seven and eight are overruled.



Substantial evidence review

 In their third and fourth points of error, appellants contend that several of the
Commission's findings of underlying fact are not supported by substantial evidence in the record. 
Because the Code does not specify a scope of judicial review for water diversion permits, the APA
governs this appeal. Tex. Gov't Code Ann. § 2001.174 (West 1995). The APA's "substantial
evidence" test provides that a court reviewing an agency action shall reverse and remand the cause
to the agency when substantial rights of the appellant have been prejudiced and the agency's
findings are not reasonably supported by substantial evidence considering the reliable evidence
in the record as a whole. Id. at § 2001.174(2)(E). The crux of a substantial evidence analysis
is whether the agency's factual findings are reasonable "in light of the evidence from which they
were purportedly inferred." John E. Powers, Agency Adjudications 163 (1990). We will sustain
an agency's finding if reasonable minds could have reached the same conclusion. Texas Health
Facilities Comm'n v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 453 (Tex. 1984).

 Appellants first attack the Commission's findings that water injected into the aquifer
under the ASR plan will travel horizontally no more than 120 feet per year, remaining readily
available for later use, and that the injected water will mix only minimally with native
groundwater. These underlying findings support the Commission's ultimate finding that the water
injected into the aquifer will subsequently be available for beneficial municipal use. We need not
determine whether the finding of limited mixing is supported by substantial evidence because such
a finding is irrelevant to the Commission's ultimate finding. Water is a fungible commodity. 
UGRA need not extract from the aquifer the very same water molecules that it injected into the
aquifer. The relevant legal requirement is that the water be put to a beneficial use. This, in turn,
requires a determination that the quantity of water put into the aquifer can be recovered and put
to such use. The Commission found that this would be the case, based on its underlying finding
that the injected water would move no more than 120 feet per year. We need test this finding only
under the substantial evidence standard. As long as a properly supported finding given in the
order supports an agency's action, we will uphold the action despite the existence of other findings
that are irrelevant or unsupported by the record. Railroad Comm'n v. City of Austin, 524 S.W.2d
262, 279 (Tex. 1975).

 The record indicates that the aquifer in question is not an impermeable underground
well. All parties agree that the top and bottom layers of the aquifer are impermeable rock, but
the sides are permeable and allow lateral water flow. However, the parties dispute the rate of
lateral water flow from the aquifer, and the record contains conflicting evidence on the issue. 
Two of UGRA's experts, John McLeod and Margaret O'Hare, testified that the rate of horizontal
flow would remain at or below 120 feet per year, which would adequately confine the water for
purposes of the proposed ASR program. Steve Musick, an expert with the Texas Water
Commission, testified that water injected into the aquifer would remain well confined and would
radiate at a velocity of about 100 feet per year. An expert for appellants, William Harvey,
calculated a far higher horizontal flow rate for water in the aquifer. In rebuttal, UGRA's expert
Kevin Bral challenged both Mr. Harvey's methodology and calculations.

 We conclude that the Commission's findings that water injected into the aquifer will
move horizontally at a rate of approximately 120 feet per year and thus be readily recoverable
when needed are supported by substantial evidence in the record viewed as a whole. The credible
evidence preponderates in favor of the findings, and reasonable minds could readily reach the
conclusion made by the Commission. We overrule appellants' fourth point of error.

 In their third point of error, appellants attack the portion of the permit allocating
water to Kerr County entities other than the City of Kerrville. Appellants contend that there is
not substantial evidence to support a finding that the water diverted for the non-Kerrville users
will actually be used in those communities; appellants urge that this portion of the permit is based
on speculation. In formal terms, appellants challenge the Commission's ultimate finding that the
water for the non-Kerrville entities will be put to beneficial use, as required by the Code. Code
§ 11.134(b)(3)(A).

 Our review of the record discloses significant evidence, and not mere speculation,
supporting the Commission's finding that water under the permit will be used beneficially by non-Kerrville entities. UGRA's expert projections of population and water demand for Kerr County
show a need for the level of water diverted under the permit. By ordinance, the City has indicated
its willingness to supply water to other Kerr County entities. At considerable expense, the City
has extended pipelines to its territorial limits to facilitate supply to nearby communities.

 Appellants respond that Kerrville has no contracts for water supply to other Kerr
County entities and that the record is devoid of evidence indicating that any such entities will be
interested in or able to obtain water from Kerrville. We find these arguments unpersuasive. The
existence of a supply contract is not required to show that water appropriated for third parties will
be put to a beneficial use. See Texas Water Rights Comm'n v. City of Dallas, 591 S.W.2d 609,
610-11 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e); City of Frisco v. Texas Water Rights
Comm'n, 579 S.W.2d 66, 72 (Tex. App.--Austin 1979, writ ref'd n.r.e.). The City of Ingram,
which is the largest water user in Kerr County besides Kerrville, wrote a letter to UGRA
expressing interest in water appropriated under the permit. (5) UGRA's witnesses indicated that
water supply from Kerrville to other Kerr County communities is not only practically feasible but
inevitable. 

 We hold that there is substantial evidence in the record to support the Commission's
finding that water under the permit will be beneficially used by non-Kerrville entities. Given the
evidence discussed above, we conclude that reasonable minds could agree with the Commission's
conclusion that the water allocated under the permit to non-Kerrville entities will be put to a
beneficial use. We overrule appellants' third point of error.



CONCLUSION


 For the reasons given, we find no error by the Commission. Therefore, we affirm
the judgment of the district court.



 

 Mack Kidd, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: November 1, 1995

Publish

1.   Formerly the Texas Water Commission.
2.   We note that appellant TRPA is subject to the three-part test for associational
standing set forth in Texas Ass'n of Business v. Air Control Bd., 852 S.W.2d 440, 447 (Tex.
1993). The only contested issue in this case, however, is whether any member has standing to
sue in an individual capacity; the record shows that TRPA easily satisfies the two remaining
prongs of the test. Because we have found that at least one TRPA member, Mr. Vance, would
have standing to sue in his own right, TRPA satisfies the test for associational standing.
3.   Tex. Water Code Ann. §§ 1.001-151.164 (West 1988 & Supp. 1995). For the sake of
simplicity, the Water Code will be subsequently cited as "the Code."
4.   We express no opinion as to whether the Code allows water to be used for the
primary purpose of recharging an aquifer other than Edwards.
5.   Appellants contend that UGRA's response to the letter shows that the water will not
be used for the non-Kerrville entities. We disagree. UGRA declined to supply water to
Ingram directly because it had a primary obligation to Kerrville, and UGRA thought that
Kerrville would require all water appropriated under the permit. This exchange took
place in 1989. Subsequently, UGRA determined that Kerrville would not require all the
water it plans to divert and, therefore, has now determined that it can supply Ingram
with water, either directly or through Kerrville as intermediate supplier.


 will be put to beneficial use, as required by the Code. Code
§ 11.134(b)(3)(A).

 Our review of the record discloses significant evidence, and not mere speculation,
supporting the Commission's finding that water under the permit will be used beneficially by non-Kerrville entities. UGRA's expert projections of population and water demand for Kerr County
show a need for the level of water diverted under the permit. By ordinance, the City has indicated
its willingness to supply water to other Kerr County entities. At considerable expense, the City
has extended pipelines to its territorial limits to facilitate supply to nearby communities.

 Appellants respond that Kerrville has no contracts for water supply to other Kerr
County entities and that the record is devoid of evidence indicating that any such entities will be
interested in or able to obtain water from Kerrville. We find these arguments unpersuasive. The
existence of a supply contract is not required to show that water appropriated for third parties will
be put to a beneficial use. See Texas Water Rights Comm'n v. City of Dallas, 591 S.W.2d 609,
610-11 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e); City of Frisco v. Texas Water Rights
Comm'n, 579 S.W.2d 66, 72 (Tex. App.--Austin 1979, writ ref'd n.r.e.). The City of Ingram,
which is the largest water user in Kerr County besides Kerrville, wrote a letter to UGRA
expressing interest in water appropriated under the permit. (5) UGRA's witnesses indicated that
water supply from Kerrville to other Kerr County communities is not only practically feasible but
inevitable. 

 We hold that there is substantial evidence in the record to support the Commission's
finding that water under the permit will be beneficially used by non-Kerrville entities. Given the
evidence discussed above, we conclude that reasonable minds could agree with the Commission's
conclusion that the water allocated under the permit to non-Kerrville entities will be put to a
beneficial use. We overrule appellants' third point of error.



CONCLUSION


 For the reasons given, we find no error by the Commission. Therefore, we affirm
the judgment of the district court.



 

 Mack Kidd, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: November 1, 1995

Publish

1.   Formerly the Texas Water Commission.
2.   We note that appellant TRPA is subject to the three-part test for associational
standing set forth in T