KNIGHT et al. v. OLDHAM et al.   (No. 893.)

(Court of Civil Appeals of Texas.   El Paso. March 6, 1919.   Rehearing Denied April 3, 1919.)·

1. WATERS AND WATER COURSES  256, 257 (1) — IRRIGATION — SUPPLY — RATES — AUTHORITY OF STATE BOARD OF ENGINEERS.

State board of water engineers, by Vernon's Sayles' Ann. Civ. St. 1914, art. 5002f (Acts 33d Leg. p. 358, § 60), has power and authority to determine the amount of irrigation water necessary for lands, and to fix the rates to be charged for delivery.

2. STATUTES  46—VALIDITY OF PROVISIONS —IRRIGATION—STATE BOARD OF WATER ENGINEERS.

Acts 33d Leg. p. 358, as amended by Acts 35th Leg. 4th Called Sess. p. 129, empowering board of water engineers to determine the amount of irrigation water necessary for land, and to fix the rates to be charged for delivery, is not so lacking in mutuality of remedies, and does not so completely fail to make estoppel by judgment of the board mutual, as to be inoperative and without force.

3. APPEAL AND ERROR  1107—DISPOSITION —REMAND FOR TRIAL—AMENDMENT OF STATUTES.

Though the statutes under which plaintiffs sought relief were not enforceable at the time suit was tried, they having been amended pending appeal, so as to be enforceable, the case must be remanded for trial.

4. WATERS AND WATER COURSES  256—IRRIGATION—STATE BOARD OF WATER ENGINEERS — CONTROL · OF PRIVATELY OWNED WATERS.

Irrigation company, not organized under Acts 33d Leg. p. 358, § 54 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5002), which privately acquired and owned its waters, lands, ditches, canals, etc., without invoking· power of condemnation provided for in statute, held in view of articles 5011l, 5011m, not subject to control of state board of water engineers, under article 5002f, so that, if purchasers from the company had any rights against its successors, it was by virtue of their contracts, enforceable only by the courts.

Appeal from District Court, Pecos County; Jas. Cornell, Judge.

Application by Joseph G. Knight and others to·the State Board of Water Engineers, opposed by James W. Oldham and others. From the decision of the board, Oldham and others appealed to the district court, which tried the case de novo, and from decree that the board was without authority to act, and dismissing the cause, applicants appeal. Affirmed.

Burges & Burges, of El Paso, and R. D. Blaydes, of Ft. Stockton, for appellants.

Harkless & Histed, of Kansas City, Mo., Blanks, Collins & Jackson, of San Angelo, and W. A. Hadden, of Ft. Stockton, for appellees.

HARPER, C. J. This action originated in an application by J. G. Knight and 60 others, who are owners of and are farming certain irrigated lands, to the state board of water engineers, in which they prayed that said board determine the amount of water controlled by appellees, the amount necessary for a proper irrigation of their lands, and that a proper rate or charge for delivery be determined and declared for water used and to be used by them, ·as provided by the law creating said board.

For answer the defendants interposed the following defenses, in addition to some others not pertinent here: (a) That the waters, which they were selling and distributing to the complainants through their irrigation projects, come from springs located upon lands owned by them in the nature of private property, and that the only rights complainants had to such waters were measured and controlled by their several water contracts with the Ft. Stockton Irrigated Lands Company, which Oldham & Burget, in purchasing the properties of the corporation,

---

 For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

had agreed to protect and perform: (b) that neither the Ft. Stockton Irrigated Lands Company nor Oldham & Burget had ever engaged in business as a public service corporation or association, were not in fact serving the public in any particular, and had never availed themselves of any of the rights and privileges conferred upon public service corporations or institutions by the state of Texas or under its law; (c) that they controlled and owned the riparian lands bordering on or tributary to the springs which fed their system, and that all such water originated and disappeared on their own premises.

The state board of water engineers assumed jurisdiction of the controversy, measured the waters, valued the properties, and fixed the service rates. The defendants appealed to the district court of Pecos county, Tex., where they pleaded the same defenses as those urged before the state board of water engineers, to which Knight and associates interposed a general denial.

The cause was tried de novo under the statute, and upon final hearing the court entered its decree in effect that board of water engineers was without authority to determine the amount of water necessary and to fix the rates to be charged for delivery, and it was further decreed that for that reason the conclusions and findings of the board appealed from be set aside and held for naught, and the cause dismissed, from which judgment the applicants have appealed.

The trial court filed findings of facts and conclusions of law. The appellant does not attack or controvert the findings of fact, but simply asserts that the trial court erred in concluding as a matter of law that the act of the Legislature under which the board of water engineers acted is inoperative because (1) it vests in the board power to regulate rates, if at all, only by implication and vaguely; (2) that the law is so lacking in mutuality of remedies, and so completely fails to make estoppel by judgment of the board mutual, as to be inoperative and without force. The conclusions of law complained of are not so definite a statement of the reason for the holding that the court would not take jurisdiction of the action as that recited in the decree entered. The reasons complained of amount to a holding that the legislative act invoked does not grant the power to the board to inquire into and fix the amount of water to be distributed and the charge to be made for its delivery in any case, and the effect of the judgment is to hold that the board was not empowered to act in this case because of its peculiar facts.

[1] In answer to the first criticism by the trial court of the irrigation laws, we think that, in proper cases, the power is clearly and definitely given in article 5002f, Vernon's Sayles' Statutes of Texas (section 60 of chapter 171, General Laws, Acts 33d Leg. p. 358):

"If any person entitled to receive or use water from any canal, ditch, flume, lateral, dam, reservoir or lake, or from any conserved or store supply, shall present to the board his petition in writing, showing that the person, association of persons, corporation or irrigation district, owning or controlling such water has a supply of water not contracted to others and available for his use, and fail or refuse to supply such water to him, or that the price or rental demanded therefor is not reasonable and just or is discriminatory, and that the complainant is entitled to receive or use such water and is willing and able to pay a just and reasonable price therefor; and shall accompany such petition with a deposit of twenty-five dollars, it shall be the duty of the board to make a preliminary investigation of, such complaint and determine whether there is probable ground therefor. If said board shall determine that no probable ground exists for such complaint, same shall be dismissed, and the deposit may, at the discretion of the board, be returned to the complainant or paid into the state treasury."

[2] The answer to the second is that the law as it then stood was possibly amenable to the criticism, for the reason that it gave water users the right to apply to the board to adjust the matters complained of here, but made no provision for the delivering company to do so in any event, not even in case the rate fixed by the board should in after years, by reason of changed conditions making it more expensive to deliver water, become oppressive; but if, for that reason, the statute should then have been held to be inoperative, since the trial of the case, it has been so amended as to cure this defect. Gen. Laws 35th Leg. 4th Called Sess. 1918, p. 129. So this board and the courts are now clothed with full and definite power to make the inquiry as to corporations or associations of persons, etc., to which the statutes apply, and to determine the questions, subject to appeal, as to all those entitled to it.

[3] For our views upon these questions, stated at greater length, see Toyah Valley Irrigation Co. v. Winston, 174 S. W. 677. It follows that, though the statutes may not have been enforceable at the time this suit was tried, since they are now so amended as to be made enforceable, it must be remanded for trial, unless the appellee, for any reason urged by it here, is not subject to be regulated by these statutes.

### Findings of Fact.

(1) The Ft. Stockton Irrigated Lands Company was organized and procured a charter from the state of Texas in 1899; their charter being based upon section 23, art. 1121, R. S. 1911, and authorizing the construction, maintenance, and operation of dams, reservoirs, lakes, wells, canals, flumes, laterals, and other necessary appurtenances for the purpose of irrigation, navigation, milling, mining, stock-raising, and city waterworks.

(2) Upon their organization and incorporation, the Ft. Stockton Irrigated Lands Company acquired a good and perfect fee-simple title to the land upon which is located what is known as the main Comanche spring, the government spring, and other springs at the head of and forming Comanche creek, lying immediately adjacent to the town of Ft. Stockton, in Pecos county, Tex.

(3) Said Comanche creek has its head and source at the springs aforesaid. From such head it originally flowed in its own natural channel for a number of miles, to a point or place where it formed a marsh and apparently sank into the ground, and the water did not again rise to the surface, and the natural flow did not at any time or at any season of the year extend beyond the place where the water sank into the earth, but at times when the natural flow of the stream was augmented by rainwater the flow extended beyond such place where the water ordinarily sank into the ground, and continued to flow beyond such place until the rainwater had been carried away.

(4) The Ft. Stockton Irrigated Lands Company, at about the time it acquired the springs before mentioned, likewise acquired a good and perfect title to all lands lying upon and being riparian to and having lateral contact with such stream to a point beyond the place where the stream ordinarily sinks into the ground.

(5) At about the same time the Ft. Stockton Irrigated Lands Company, deeming the lands riparian to the stream not to be adaptable to irrigation, acquired a quantity of level land, not tributary nor adjacent to such stream, nor having lateral contact with it, and not being riparian to it, to the north of said stream, and likewise a quantity of land lying to the south of it, and subdivided the land to the north into 10-acre tracts for purposes of sale to irrigation farmers, and designated the same block 1, and later likewise subdivided the land they had acquired to the south of the stream into 10-acre tracts, with a view of selling same to irrigation farmers, and designated such land block 2.

(6) The Ft. Stockton Irrigated Lands Company constructed canals, laterals, and ditches to convey the water to, and to irrigate, all the subdivisions of both blocks 1 and 2.

(7) All of the defendants herein purchased subdivisions of such blocks 1 and 2 for the purpose of irrigating the same from the Ft. Stockton Irrigated Lands Company, all of them having purchased lands that were never riparian in nature, and each of the defendants entered into a contract with the Ft. Stockton Irrigated Lands Company, entitling him to the use of an acre foot of water per annum, or so much of said acre foot of water per annum as might be necessary to properly irrigate the lands purchased, at an agreed price of $1.50 per acre per annum.

(8) The Ft. Stockton Irrigated Lands Company acquired all of the lands herein spoken of as a result of private negotiations and dealings, and did not resort, nor attempt to resort, to condemnation proceedings in the acquisition of any of such lands.

(9) The Ft. Stockton Irrigated Lands Company located all of its ditches, reservoirs, canals, laterals, and all improvements of whatsoever nature placed upon the land by them, upon lands acquired by them by private purchases as aforesaid.

(10) The Comanche creek is supplied mainly by the main Comanche spring and the government spring hereinbefore spoken of, which together furnish approximately 40,000,000 gallons of water every 24 hours; this supply being constant, and not varying with the seasons, nor because of weather conditions.

(11) Near the springs upon the lands so acquired by the Ft. Stockton Irrigated Lands Company, near the original channel of Comanche creek, and near the canals and ditches constructed by the Ft. Stockton Irrigated Lands Company, at three distinct places, water emerges from the ground upon lands not owned by the Ft. Stockton Irrigated Lands Company and flows into and mingles with the other waters of the Comanche creek; one of such places being immediately in front of the old Rooney store, one of them upon property belonging to the Catholic Church, and for many, many years, 40 or more, enclosed by a fence, and one of them in a public street near the county jail in Ft. Stockton, Tex.

(12) In 1913 there was a foreclosure sale at which Oldham & Burget, a firm composed of James W. Oldham and William B. Burget, became the purchasers of all the tangible property then owned by the Ft. Stockton Irrigated Lands Company, but there was no transfer to them, nor attempted transfer, of any stock or charter or corporate rights of the old corporation, and no subsequent charter was applied for by them, nor granted to them, nor to any one for them; but at such foreclosure sale, and as a result of such foreclosure sale, there was expressly conveyed to them all the lands which the Ft. Stockton Irrigated Lands Company had not previously sold to irrigation farmers, including the lands upon which all the above-mentioned springs are located, together with the entire irrigation plant and all the company's water contracts with irrigation farmers, including those held by the defendants Knight et al.

(13) Subsequent to the rendition of the judgment or order of the water commissioners, and to the appeal therefrom, Oldham & Burget disposed of all of their rights to W. A. Hadden, of Pecos county, Tex., trustee for himself and others, but neither said trustee nor any of his associates ever became parties to this proceeding in any manner.

All the above facts were established by

documentary evidence and by the testimony of a witness deemed by the court to be thoroughly credible, and were not controverted nor disputed; and the court thereupon announced to counsel that he would not hear testimony bearing upon any other finding or conclusion of the board of water commissioners, nor upon any other phase of the case, nor upon any other issue of fact.

For convenience the appellees are referred to as though they were in fact a corporation, but we are not holding that they are in the same position in law, in all respects, as if they were a corporation, but only so as the successors of this corporation, under the facts of the instant case.

[4] Starting with the uncontroverted facts that the corporation was the owner of its water, and all the lands to which it undertakes to deliver it, at the time it was incorporated, it will, of course, be conceded that so long as it maintained that status it could use both without interference from this board; and this must be true until it so changes its position relative to such waters and lands as to bring it within the purview of the legislative act creating the board. The corporation was organized in 1899, under section 23 of article 1121, R. S. 1911, and by its charter authorized to "construct, maintain and operate * * * canals * * * and other necessary appurtenances for irrigation," and the act invoked in this case, creating the board and granting its powers, was passed in 1913. Acts 33d Leg. c. 171, p. 358. Section 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4991) reads:

"*Certain Waters Declared State Property.*— The unappropriated waters of the ordinary flow and underflow and tides of every flowing river or natural stream, of all lakes, bays or arms of the Gulf of Mexico, collections of still water, and of the storm, flood or rain waters of every river or natural stream, canon, ravine, depression or water shed, within the state of Texas, the title to which has not already passed from the state, are hereby declared to be the property of the state, and the right to the use thereof may be acquired by appropriation in the manner and for the uses and purposes hereinafter provided."

But a casual glance will reveal that primarily this act did not apply to the waters of this spring, the title to which, found by the trial court, had theretofore passed from the state. Is appellee subject to the ratemaking powers of this board, because it is now engaged in business of a public character as urged by appellants? This could not be a test in this case, because this board only has jurisdiction over irrigation enterprises over which it is given the power of control by the provisions of the act creating it. Ladd v. S. C. P. M. Co., 53 Tex. 188. Section 60, art. 5002f, Vernon's Sayles, above quoted, provides that the board shall act upon the application of a person entitled to the use of the water. Under the facts in this case, the appellants are not entitled to the waters, because they are public, for they are not such, because privately owned, and are not declared to be such by section 1, above quoted.

Article 5002 of this act authorizes the formation of corporations, article 5002a provides that all such corporations shall have full power and authority to make contracts for the sale of permanent water rights, etc., and article 5002b designates that all persons who own or hold a possessory right or title to land adjoining or contiguous to any dam, canal, ditch, or flume maintained under the provisions of this act, and who shall have secured a right to use of water in said canal, ditch, etc., shall be entitled to be supplied from such canal.

Bearing in mind that the act under discussion treats of public waters as designated in the act—"unappropriated waters, the title to which had not passed from the state"— and that corporations may be chartered under its provisions to carry out the purposes of the act, to wit, a proper and equitable distribution of the waters designated, and bearing in mind that the appellee was not organized under the act, and noting that its waters, lands, ditches, canals, etc., are privately owned, and without invoking the power of condemnation of lands for ditches, etc., provided for in the act, it seems clear that it is not subject to the control of this board; so, if these applicants have any rights which are being denied, then it must be by virtue of their contracts, which can only be enforced by the courts, and not in any wise by the board of water engineers created by the act.

It would seem that the above conclusion is emphasized by the provisions of sections 97 and 98 of the act (Vernon's Sayles' Ann. Civ. St. 1914, arts 5011l, 5011m). Nothing in this act contained shall be held or construed as a recognition of any riparian right in the owner of any lands the title to which shall have passed out of the state subsequent to the 1st day of July, 1895. This is the date upon which the first act went into effect, which first declared certain waters to be public. Section 98. Nothing in this act contained shall be held or construed to alter, affect, impair, increase, destroy, validate, or invalidate any existing or vested rights existing at the date when this act shall go into effect. By these sections the Legislature clearly indicated that it did not intend to make the act applicable to corporations or persons which had secured vested rights and entered into contracts such as in this case, and we think did not do so either by implication or in fact. The court did not, therefore, err in dismissing the cause for want of jurisdiction.

Affirmed.