**BRUSHY CREEK MUNICIPAL UTILITY DISTRICT,**
Appellee,

v.

**TEXAS WATER COMMISSION,**
et al., Appellants.

No. 3–93–136–CV.

Court of Appeals of Texas,
Austin.

March 2, 1994.

Rehearing Overruled Dec. 14, 1994.

Barbara Day, Butler, Porter, Gay & Day, Austin, for appellant.

Dan Morales, Atty. Gen., Susan D. Bergen, Asst. Atty. Gen., Austin, for appellee TX Water Com'n.

Ronald J. Freeman, Law Offices of Ronald J. Freeman, Austin, for appellee Highland Management, Inc., Hy–Land Joint Venture, Hy–Land North Joint Venture and First Hotel Investments Corp.

Before POWERS, JONES and KIDD, JJ.

POWERS, Justice.

Brushy Creek Municipal Utility District sued the Texas Water Commission and the City of Round Rock for judicial review of the Commission's final order in a contested case. Other parties intervened.[1] The district court affirmed the agency order and the District appeals from the resulting judgment. Holding the Commission had no jurisdiction of the controversy, we will reverse the agency order and the district-court judgment affirming the order; and, rendering the judgment we

believe the district court should have rendered, we will order the cause remanded to the district court for further remand to the Commission with instructions that the cause be dismissed for want of jurisdiction. *See* Texas Water Code Ann. § 5.351 (West 1988) (the "Code"); Administrative Procedure Act, Tex.Gov't Code Ann. §§ 2001.001–.902 (West 1994) ("APA");[2] Tex.R.App.P. 80(b).

## THE CONTROVERSY

The City of Round Rock obtains from the Brazos River Authority a supply of water that the City, in turn, sells and distributes to its inhabitants. The City also furnishes such water to the District under a contract made between them in 1986. In their contract, the City agreed to furnish the water for a twenty-year period and the District agreed to pay for the water according to fees and charges fixed in the contract. Wishing to be relieved of the contract fees and charges, the City in 1991 initiated in the Commission a contested case, requesting that the agency revise the contract by substituting rates fixed by the Commission for the fees and charges stated in the contract. The Commission granted such relief in the final order we now review. The District sued for judicial review of the order, contending among other things that the Commission had no power take such action.

The Commission claims under two statutes a power to revise the contract fees and charges and to substitute official rates fixed by the agency. The two statutes are sections 11.036 and 12.013 of the Code. They provide as follows:

§ 11.036. **Conserved or Stored Water: Supply Contract**

(a) A person, association of persons, corporation, or water improvement or irrigation district having in possession and control any storm water, floodwater, or rainwater *that is conserved or stored*

---

1. The intervenors were Highland Management, Inc., Hy–Land Joint Venture, Hy–Land North Joint Venture, and First Hotel Investments Corporation.

2. All citations in this opinion are to the current Administrative Procedure Act rather than the former Administrative Procedure and Texas Regis-

ter Act because the recent codification did not substantively change the law. Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 47, 1993 Tex. Gen.Laws 5837, 986; Administrative Procedure Act, Tex.Gov't Code Ann. §§ 2001.001–.902 (West 1994).

*as authorized by this chapter* may contract to supply the water to any person, association of persons, corporation, or water improvement or irrigation district having the right to acquire use of the water.

(b) The price and terms of the contract shall be just and reasonable and without discrimination, and the contract *is subject to the same revision and control as provided in this code for other water rates and charges.* If any person uses the stored or conserved water without first entering into a contract with the party that conserved or stored it, the user shall pay for the use at a rate determined by the commission to be just and reasonable, subject to court review as in other cases.

Code § 11.036 (West 1988) (emphasis added).

### § 12.013. Rate–Fixing Power

(a) The commission shall *fix reasonable rates* for the furnishing of raw or treated water for any purpose mentioned in Chapter 11 or 12 of this code.[3]

(b) The term "political subdivision" when used in this section means incorporated cities, towns or villages, counties, river authorities, water districts, and other special purpose districts.

(c) The commission in reviewing and fixing reasonable rates for furnishing water under this section may use any reasonable basis for fixing rates as may be determined by the commission to be appropriate under the circumstances of the case being reviewed; provided, however, the commission may not fix a rate which a political subdivision may charge for furnishing water which is less than the amount required to meet the debt service and bond coverage requirements of that political subdivision's outstanding debt.

(d) The commission's jurisdiction under this section relating to incorporated cities, towns, or villages shall be limited to water furnished by such city, town, or village to another political subdivision on a wholesale basis.

Code § 12.013 (West 1988) (emphasis added).

The District contends the two statutes, properly construed, vest in the Commission a power to fix water rates only when two conditions concur: (1) the seller is an *appropriator* of the water he sells; and (2) a *purchaser* complains to the Commission that the seller has denied him available water, that he is entitled to . receive, at a price that is just, reasonable, and nondiscriminatory. It is undisputed that the City is not an appropriator of the water it sells; and, of course, it is also undisputed that the second condition has not been met. The Commission, the City, and the intervenors deny that such is a proper construction of sections 11.036 and 12.013.

### RULES OF STATUTORY CONSTRUCTION

 We may refer in the beginning to the rules that govern our consideration as we attempt to assign the legally correct meaning to sections 11.036 and 12.013. The first is a rule of substantive law: an administrative agency, such as the Commission, has no inherent power; rather, an agency possesses only the powers delegated to it by the legislature in clear and unmistakable terms, *unaided by implications. See Sexton v. Mount Olivet Cemetery Ass'n,* 720 S.W.2d 129, 137 (Tex.App.—Austin 1986, writ ref'd n.r.e). And we must discern the legislature's intent from a general view of the whole enactment, then construe any questioned part of the statute so as to give effect to the legislative purpose. We are not responsible for omissions in legislation; our duty and power extends only to giving a fair and true interpretation of the statutory language, which means an interpretation that is not forced, exaggerated, or strained. The meaning set-

---

**3.** We may remark here that § 11.023 of the Code sets out the purposes for which water may be used. They are basically as follows: (1) domestic and municipal uses, including water for sustaining human life and the life of domestic animals; (2) industrial uses; (3) irrigation; (4) mining and recovery of minerals; (5) hydroelectric power; (6) navigation; (7) recreation and pleasure; (8) stock raising; (9) public parks; (10) game preserves; and (11) "any other beneficial use." Code § 11.023(a)–(b) (West 1988). We cannot find in Chapter 12 a purpose that is not also mentioned in Chapter 11.

tled upon must be one suggested by the statutory language and a meaning that the language will fairly sanction and clearly sustain. *Id.*

And because the statutes in question are found in the Water Code, first enacted in 1971, other rules of statutory construction suggest themselves. We should consider at all times the old law, the evil, and the remedy. Tex.Gov't Code Ann. § 312.005 (West 1988); *see also Citizens Bank of Bryan v. First State Bank,* 580 S.W.2d 344, 348 (Tex. 1979). We must interpret sections 11.036 and 12.013 *in context* so that legal and harmonious effect is allowed all parts of the Code; and, in that regard, we are invited to examine former statutory provisions on the same subject. Tex.Gov't Code Ann. §§ 311.011(a), .023(4) (West 1988).

█ Other rules of construction are of particular importance in the present case because sections 11.036 and 12.013 existed as statutes *before* their revision and incorporation into the Code in 1971. The revision was merely a formal revision; it was not intended to work a substantive change in the legal effect of any statute. *See generally* Moulton A. Goodrum, Jr. & William H. Gordon, Jr., *Comment, Substantive Law Revision in Texas,* 37 Tex.L.Rev. 740 (1959). Indeed, the legislature expressly declared its intention in section 1.001 of the Code: "This restatement shall not *in any way* make any changes in the substantive laws of the State of Texas." Code § 1.001(c) (West 1988) (emphasis added). This statement simply augments the presumption that would ordinarily prevail. "A statute incorporated into a code is presumed to be incorporated without change even though it is reworded and rephrased and in the organization of the code its original sections are separated." Norman J. Singer, 1A *Sutherland Statutory Construction* § 28, at 481 (4th ed. 1985). The presumption extends even to the pre-code construction placed upon the incorporated statute. *American Nat'l Life Ins. Co. of Tex. v. Montgomery,* 640 S.W.2d 346, 351 (Tex.App.—Beaumont 1982, writ ref'd n.r.e.).

The applicability of these various rules of construction will become evident in our discussion and we need not cite them again.

## DISCUSSION AND HOLDINGS

█ The Commission, the City, and the intervenors believe section 12.013 evidences a legislative grant to the Commission of a complete and independent power to fix rates within the limits set therein. They believe, moreover, that section 12.013 is the *exclusive* object the legislature had in mind when it provided in section 11.036(b) that contracts for the supply of stored water to others are "subject to the same revision and control as provided in this code for other water rates and charges." This view is tenable at first glance, perhaps, because section 12.013 is found in a separate chapter of the Code. This disjunction did not always exist, as discussed hereafter. For the present, however, we focus our attention on section 11.036.

Subsection (a) of section 11.036 restricts the scope of the statute in two respects. First, the scope of the section is limited to "storm water, floodwater, or rainwater" that has been conserved or stored. This means that no other category of water, such as water from artisan wells and water subject to riparian claims, is included within the section even if the water happens to be "conserved or stored." *See generally* Wells A. Hutchins, *The Texas Law of Water Rights* 163–69, 396–99 (1961). Next, section 11.036 restricts itself to the included categories of water when these are reduced to storage "as authorized by this chapter." This means that the storage must result from *compliance* with those provisions of chapter 11 that sanction the diversion and storage of the water upon the meeting of certain conditions. Hence, the water-supply contracts mentioned in subsection (b) refer only to water of that character. Under what conditions, then, does chapter 11 sanction the diversion and storage of the relevant categories of water?

The State claims title to the waters in question. *See* Code § 11.021(a) (West 1988). Nevertheless, "[t]he right to the *use* of state water may be acquired by *appropriation* in the manner" set out in chapter 11, after which the water "may be taken or diverted from its natural channel." Code § 11.022 (West 1988) (emphasis added). The "man-

ner" in which one may acquire the right of "appropriation" is prescribed in detail in sub-chapter D of chapter 11. That subchapter provides (with only two exceptions, neither of which is applicable here) that "no person may appropriate any state water or begin construction of any work designed for the *storage,* taking or diversion of water *without first obtaining a permit* from the commission to make the *appropriation.*" Code § 11.121 (West 1988) (emphasis added). The procedure for obtaining such permits, on application therefor, is set out in sections 11.124–.135 of the Code. We believe it therefore obvious that section 11.036 encompasses only contracts for the supply of water made by a seller who is himself an appropriator of the stored water by virtue of a permit issued by the Commission.

We may observe at this point that chapter 11 itself makes specific provision for Commission regulation of water supplied and sold under the chapter, including the price thereof. Section 11.041, for example, provides as follows:

### § 11.041. Denial of Water: Complaint

(a) Any person entitled to receive or use water from any canal, ditch, flume, lateral, dam, reservoir, or lake or from any conserved or stored supply may present to the commission a written petition showing:

(1) that he is entitled to receive or use the water;

(2) that he is willing and able to pay a just and reasonable price for the water;

(3) that the party owning or controlling the water supply has water not contracted to others and available for the petitioner's use; and

(4) that the party owning or controlling the water supply fails or refuses to supply the available water to the petitioner, or that the price or rental demanded for the available water is not reasonable and just or is discriminatory.

(b) If the petition is accompanied by a deposit of $25, the executive director shall have a preliminary investigation of the complaint made and determine whether or not there are probable grounds for the complaint.

(c) If, after preliminary investigation, the executive director determines that probable grounds exist for the complaint, the commission shall enter an order setting a time and place for a hearing on the petition.

. . . .

(e) At least 20 days before the date set for the hearing, the commission shall transmit by registered mail a certified copy of the petition and certified copy of the hearing order to the person against whom the complaint is made.

(f) The commission shall hold a hearing on the complaint at the time and place stated in the order. It may hear evidence orally or by affidavit in support of or against the complaint, and it may hear arguments. *On completion of the hearing, the commission shall render a written decision.*

Code § 11.041 (West 1988) (emphasis added).

Thus far, it appears that the District is correct in its contention that the water-supply contracts contemplated by section 11.036 are subject to Commission revision and control under section 11.041, that is to say, when (1) the seller of the stored water is an "appropriator" of the water and (2) a purchaser complains that the seller has denied him available water, that the purchaser is entitled to receive, at a just, reasonable and non-discriminatory price. Does section 12.013 enlarge the Commission's rate-fixing power to encompass the case when the seller of the stored water is *not* an appropriator of the water and the *seller,* but not the purchaser, complains to the Commission?

One may say that section 12.013 appears on its face to be practically all encompassing in the rate-fixing power it grants the Commission: "The commission shall fix reasonable rates for the furnishing of raw or treated water for any purpose mentioned in Chapter 11 or 12 of this code." Code § 12.013(a) (West 1988). But if one takes this view, then one simultaneously renders meaningless the restriction in section 11.036 that limits the scope of the statute to the specified categories of water and to water-supply contracts made by one who is himself an appropriator

of the water supplied. *See* Code § 11.036(a) (West 1988). Moreover, the provisions of section 11.041, authorizing the Commission to revise and control water-supply contracts on the complaint of persons entitled to receive the water, are rendered entirely superfluous. *At minimum*, the provisions of section 12.013, on the one hand, and sections 11.036 and 11.041, on the other hand, create an ambiguity as to what exactly are the conditions under which the Commission may fix the rates at which water is supplied under contract in cases like the present. The ambiguity is resolved rather simply by an examination of the historical evolution of the statutes in question.

In 1895, the legislature enacted two statutes pertaining to the regulation of water. The first act was presented to the Governor on March 9, 1895, for his approval; he did not sign the act and it became law without his signature. *See* Act effective July 29, 1895, 24th Leg., R.S., ch. 21, § 1 (note following § 21), 1895 Tex.Gen.Laws 21, 26 (since repealed). The second act amended the first. *See* Act approved March 21, 1895, 24th Leg., R.S., ch. 23, § 2, 1895 Tex.Gen.Laws 27–28 ("Act of 1895").[4] In our discussion, we shall refer to the first 1895 act as amended in the same session.

The amended Act of 1895 made significant changes in the state's regulation of water, bringing within such regulation "[e]very person, corporation, or association of persons who have constructed or may hereafter construct any ditch, canal, reservoir, dam or lake" and all who took "the water from any natural stream, storage reservoir, dam or lake." Act of 1895 § 6. A legal right so to "appropriate" the state's water might be acquired by recording with the county clerk a statement of past beneficial use of a specified quantity of water or a statement of an intention to so use the water in the future, coupled with the actual carrying out of the intention. Act of 1895 § 8.

The Act of 1895 also provided for the chartering of corporations, under the Act or under the general laws,

> for the purpose of constructing, maintaining and operating canals, ditches, flumes, feeders, laterals, reservoirs, dams, lakes and wells, and of conducting, transferring and furnishing water to all persons entitled to the same, ... and for the purpose of building storage reservoirs for the collection and storage of water.... All such corporations shall have full power and authority to make contracts for the sale of permanent water rights and ... to lease, rent or otherwise dispose of the water controlled by such corporation for such time as may be agreed upon....

Act of 1895 § 11. Persons owning or holding a possessory right or title to land adjoining the distribution works and "who shall have secured a right to the use of water" were entitled to be supplied with water by the corporation under a contract; however, if the corporation and the buyer failed to agree upon a price then such water was required to be furnished "at such prices as may be reasonable and just." Act of 1895 § 11.

In 1905, it was said that the State might regulate such contracts, made under the 1895 Act, because the appropriative right under

---

4. The 1895 enactments were not the first statutes pertaining to the regulation of water rates. A statute enacted in 1875, superseded by another in 1876, authorized, for example, the granting of public lands to "canal companies" and "irrigation companies" on their construction of canals and ditches according to the statutory requirements. They provided for a state inspector appointed by the governor to whom the inspector reported. The governor certified completion of the work to the commissioner of the general land office who issued patents to the land. Both statutes implicitly authorized such companies to supply water to cities and towns, for both provided that such water shall be supplied at "reasonable and proper" rates until the legislature itself should fix the rates. *See* Act approved March 10,

1875, 14th Leg., 2nd C.S., ch. LXIII, § 1–9, 1875 Tex.Gen.Laws 77–79 (since repealed); Act approved August 21, 1876, 15th Leg., R.S., ch. CL, §§ 1, 9, 15, 1876 Tex.Gen.Laws 253, 255 (since repealed). By necessary implication, enforcement of the requirement of "reasonable and proper" rates was left to the courts.

In reference to the 1875 Act, it was said that the formation of a corporation under the Act did not automatically confer upon the corporation a right to use any water; rather, such a right arose only when the corporation acquired a specific legal right to do so, either by condemnation or purchase. *Mud Creek Irrigation, Agric. & Mfg. Co. v. Vivian*, 74 Tex. 170, 11 S.W. 1078, 1079 (1889).

which the water was obtained and stored in the first instance, coupled with the power of eminent domain given such corporations to obtain the necessary land and right of way, *affected the public interest. Borden v. Trespalacios Rice & Irrigation Co.,* 98 Tex. 494, 86 S.W. 11, 14 (1905), *aff'd,* 204 U.S. 667, 27 S.Ct. 785, 51 L.Ed. 671 (1907); *see also Imperial Irrigation Co. v. Jayne,* 104 Tex. 395, 138 S.W. 575, 581 (1911). That the contracts affected the public interest was, of course, the talisman that enabled the State to exercise its police power to regulate a privately owned business, including its prices, without violating the due-process clause of the Fourteenth Amendment. *See Wolff Packing Co. v. Court of Indus. Relations,* 262 U.S. 522, 535–36, 43 S.Ct. 630, 632–33, 67 L.Ed. 1103 (1923); *Commercial Standard Ins. Co. v. Board of Ins. Comm'rs of Tex.,* 34 S.W.2d 343, 344 (Tex.Civ.App.—Austin 1931, writ ref'd).[5] Again, enforcement of the statutory provision for a just and reasonable price was left to the courts by necessary implication.

In 1913, however, the legislature moved from general-law regulation to a system of state-agency administration and enforcement of the water laws. The 1913 Act created the Commission's predecessor, the Board of Water Engineers. Act of March 29, 1913, 33rd Leg., R.S., ch. 171, § 7, 1913 Tex.Gen.Laws 358, 359 (since repealed) ("Act of 1913"). The Act granted a right to appropriate water by constructing, enlarging, or extending any dam, lake, reservoir or other storage or distribution work, but this might be done only under a permit issued by the Board. Act of 1913 § 15. And the Act provided:

[A]ny person, association of persons, corporation, or irrigation district having in possession and control storm, flood, or rain waters *conserved or stored under the provisions of this Act* may enter into contract to supply same to any person, association of persons, corporation, or irrigation district having *the right to acquire such use;* provided, that the price and terms of such contract shall be just and reasonable and without discrimination *and subject to the same revision and control as hereinafter provided for other water rates and charges....*

Act of 1913 § 50 (emphasis added). This is, of course, the antecedent of section 11.036 of the present Code.

The reference to the specified waters "conserved or stored under the provisions of this Act" necessarily referred to the right of appropriation by diversion and storage *under a Board permit,* as set out in detail in section 15 of the Act of 1913; and "the right to acquire such use" necessarily included any such right possessed by persons on land adjoining the stored water or distribution works, as described in section 56 of the Act of 1913. The right to use of the water included a right to contract for available water at a just, reasonable, and nondiscriminatory price. Act of 1913 § 57. Section 50 of the 1913 Act made these contracts "subject to the same revision and control as hereafter provided for other water rates and charges." The only possible object of this reference was found in sections 60 through 62 of the 1913 Act, wherein the Board was given a power to examine and revise contracts for the sale and distribution of the stored waters to others, because the Act of 1913 contained no provision analogous to section 12.036 of the Code. Sections 60 through 62 authorized the Board to revise such contracts if it determined after investigation that "probable ground" existed for a complaint, made by one having a right to the water, that he had been denied available water at a just, reasonable, and nondiscriminatory price that he was willing to pay. After making such determination, the Board was obliged to hold an evidentiary hearing and render a "decision in writing." Act of 1913 § 62. The Act supplied, however, no indication about what the decision should be on facts found to exist. Sections 60 through 62 are obviously the antecedents of section 11.041 of the Code.[6]

---

5. The talisman was exchanged for another in 1934—whether the regulation was found to be arbitrary, discriminatory, or demonstrably irrelevant to a public policy the legislature was free to adopt. *Nebbia v. New York,* 291 U.S. 502, 531– 32, 535–37, 539, 54 S.Ct. 505, 513–14, 515–16, 517, 78 L.Ed. 940 (1934).

6. Sections 60 through 62 provided as follows:

A 1917 enactment carried forward in essentially the same terms the provisions of the 1913 Act discussed in the preceding paragraph. The diversion and collection of water for storage and its distribution and sale to others having acquired a right to use the water were authorized under a permit to appropriate the water issued by the Board. Act approved March 19, 1917, 35th Leg., R.S., ch. 88, § 47, 1917 Tex.Gen.Laws 211, 222 (since repealed) ("Act of 1917"). Again, the terms of such water-supply contracts remained "subject to the same revision and control as hereinafter provided for other water rates and charges." Act of 1917 § 49. And the Board was again given the power to "render a decision in writing" if it found after investigation that there existed "probable grounds" for a complaint that one having a right to receive available water had been denied water at a just, reasonable, and non-discriminatory price. Act of 1917 §§ 59–61.

Nothing in the acts of 1913 and 1917 *expressly* authorized the Board to *fix the rates* at which water was sold to others who had acquired a right to purchase available water. At best, the power was only *implicit* in the board's power to "render a decision in writing" after an investigation and hearing on the customer's complaint. The resulting uncertainty was remedied in 1918 by an amendment to the Act of 1917. The amendment added to the 1917 Act section 61–A, providing as follows:

> Sec. 60. Regulation of Rates.—If any person entitled to receive or use water from any ... conserved or stored supply, shall present to the board his petition in writing, [that persons] owning or controlling such water ... fail or refuse to supply such water to him, or that the price or rental demanded therefor is not reasonable and just or is discriminatory; and that the complainant is entitled to receive or use such water and is willing and able to pay a just and reasonable price therefor; ... it shall be the duty of the board to make a preliminary investigation of such complaint and determine whether there is probable ground therefor.
>
> Sec. 61. Ibid.—If the board shall determine that probable ground exists for such complaint, it shall enter an order setting said matter for hearing at a time and place to be named therein.
>
> Sec. 62. Ibid.—At the time and place stated in such order, the board shall sit to hear such complaint. It may hear evidence orally or by

The said Board shall have power and authority and it shall be its duty to fix reasonable rates for the furnishing of water for the purposes or any purpose mentioned in this Chapter.

Act approved April 2, 1918, 35th Leg., 4th C.S., ch. 55, sec. 1, § 61–A, 1918 Tex.Gen. Laws 129 (since repealed). This is, of course, the substance of section 12.013(a) of the present Code.

Was the amendment intended to give the board a new, almost plenary, and general power to fix rates in *any* transaction where water was furnished for a legally permissible purpose? That definitely was *not* the legislature's intention. Rather, section 61–A was added to the Act of 1917 for the specific purpose of making the Board's power to fix rates *explicit and certain in cases arising under sections 59 through 62 of the Act of 1917*—cases wherein the Board had been empowered to "render a decision in writing" but had not been given an explicit power to fix rates by its decision. *See Knight v. Oldham,* 210 S.W. 567, 568 (Tex.Civ.App.—El Paso 1919, writ ref'd); *Kohler v. United Irrigation Co.,* 222 S.W. 337, 338 (Tex.Civ.App.—San Antonio 1920, no writ).

From 1918 until 1971, there apparently was no doubt as to the meaning of section 61–A. It meant that the Board's power to render a decision in writing included the power to fix a rate by its decision in cases arising under sections 59 through 61 of the Act of 1917.[7]

> affidavit in support of or against such complaint, and may hear arguments, and ... upon completion thereof shall render decision in writing.

7. The pre-code relationship of the various statutes under discussion may be gathered from their arrangement in Title 128 of Texas Revised Civil Statutes where they provided as follows:

I. IRRIGATION AND WATER RIGHTS
 Chapter I. Use of State Water
 1. Public Rights
 ....
 2. Board of Water Engineers
Art. 7467. Property of the State.—The waters of the ordinary flow and underflow and tides of every flowing river or natural stream, ... and the storm, flood or rain waters of every river or natural stream, canyon, ravine, depression or watershed, ... are hereby declared to be the property of the State, and the right to the use

In its 1971 enactment of the Water Code, the legislature detached former section 61–A from its pre-code context as an integral part of the adjudication process provided in former sections 59 through 61. The former section 61–A was placed in a chapter dealing with the general power and duties of the Board while the former sections 59 through 61 were placed in a chapter dealing with water rights. *See* Act of March 29, 1971, 62d Leg.R.S., ch. 58, §§ 5.041, 6.056, 1971 Tex. Gen.Laws 110, 118, 153. We find nothing to suggest, however, that the detachment and new contexts were designed to give the Board a new, independent, and general rate-fixing power over water supply contracts, *in addition* to the Board's rate-fixing power as it existed before the codification process, when it was limited to the Board's adjudica-tion of complaints made by persons who had acquired a right to use water controlled and stored by an appropriator.

Were we to construe sections 11.036, 11.041, and 12.013 in that manner, we believe we would violate the legislature's express declaration that its codification of the water laws "shall not *in any way* make any changes in the substantive laws...." Code § 1.001(c) (West 1988) (emphasis added). At best, such a construction could only result in the Commission's having acquired the new and independent power by mere implication and section 11.041 would be rendered super-fluous.

We believe, therefore, that sections 11.036, 11.041, and 12.013 of the present Code must be construed together so that each has legal effect and operates in harmony with the oth-

---

thereof may be acquired by appropriation in the manner and for the uses and purposes hereinafter provided, and may be taken or diverted from its natural channel for any of the purposes expressed in this chapter.

. . . .

Art. 7492. Application in writing.—Every person ... who shall ... desire to acquire the right to appropriate, for the purposes stated in this chapter, unappropriated water of the State, shall, before commencing the construction, enlargement or extension of any dam, lake, reservoir or other storage work [or distribution works], ... make an application in writing to the Board for a permit to make such appropriation, storage or diversion.

. . . .

### 3. Regulation of Use

. . . .

Art. 7547. Who may enter into contract.—Any person ... having in possession and control storm, flood or rain waters conserved or stored, under the provisions of this chapter, may enter into contract to supply same to any person ... having the right to acquire such use; provided that the price and terms of such contract shall be just and reasonable and without discrimination and subject to the same revision and control as hereinafter provided for other water rates and charges.

. . . .

Art. 7560 Board to make preliminary investigation.—If any person entitled to receive or use water ... from any conserved or stored supply, shall present to the board his petition in writing, showing that the person ... controlling such water, has a supply of [available water] and fails or refuses to supply such water to him, or that the price or rental demanded therefor is not reasonable and just, or is discriminatory; ... it shall be the duty of the Board to make a preliminary investigation of such complaint and deter-mine whether there is probable ground there-for....

Art. 7561. Board to set date.—If the Board shall determine that probable grounds exist for such complaint, it shall enter an order setting said matter for hearing at a time and place to be named therein....

Art. 7562. Board to hear evidence.—At the time and place stated in such order the Board shall sit to hear such complaint. It may hear evidence orally or by affidavit in support of or against such complaint, and may hear arguments, ... and, upon completion thereof, shall render decision in writing.

Art. 7563. Board to fix rates.—The said Board shall have power and authority, and it shall be its duty to fix reasonable rates for the furnishing of water for the purposes or any purpose mentioned in this chapter.

Art. 7564. Appeal from decision.—Appeal from such decision of the Board may be taken within the time and in the manner as herein provided for other appeals from the decision of such Board....

. . . .

Revised Statutes, 39th Leg., R.S., arts. 7467, 7492, 7547, 7560–7564, 1925 Tex.Rev.Civ.Stat. 2, 2170–90 (since repealed).

As of 1950, it appears, there had "been only seven rate hearings before the Board since 1917, and none since 1934," under the foregoing statutes. Phillip J. Robinson, Comment, *The Relations of Private Irrigation Companies and Their Users in Texas*, 28 Tex.L.Rev. 948, 968 n. 75 (1950). This would seem to be quite surprising *if* Article 7562 vested in the Board and its successor, the Commission, a plenary power to fix water rates in almost any sale of stored waters of the kind indicated—a power that existed independently of the context made by Articles 7560–7561.

ers. We hold in consequence that the Commission's rate-fixing power under section 12.013 of the Code is limited, in cases involving water-supply contracts like the present, to controversies arising and conducted under sections 11.036 and 11.041 of the Code, with the limitations these sections express.

Accordingly, we reverse the trial-court judgment affirming the Commission's final order and remand the cause to the district court with instructions to reverse the Commission's final order and remand the cause to the Commission with instructions the cause be dismissed for want of jurisdiction.