**TEXAS WATER COMMISSION et al., Petitioners,**

v.

**BRUSHY CREEK MUNICIPAL UTILITY DISTRICT, Respondent.**

No. 95–0021.

Supreme Court of Texas.

Argued Sept. 19, 1995.

Decided Feb. 9, 1996.

Ronald J. Freeman, Robert J. Hearon, Jr., Robin A. Melvin, Susan Bergen Schultz, Dan Morales, Austin, for Petitioners.

Stephan L. Sheets, Mark Dietz, Round Rock, Barbara Day, Austin, J. Lee Jarrard, Jr., Round Rock, for Respondent.

SPECTOR, Justice delivered the opinion of the Court, in which all Justices join.

This is an administrative appeal of a Texas Water Commission[1] order setting wholesale water rates. The court of appeals held that the Commission lacked authority to establish rates in this case because the party seeking to invoke the Commission's jurisdiction was a water supplier and was not an appropriator of state water. 887 S.W.2d 68. We reverse the judgment of the court of appeals and remand to that court for further proceedings.

## I

The City of Round Rock supplies water to the Brushy Creek Municipal Utility District on a wholesale basis under a twenty-year contract the parties executed in 1986. Round Rock's sources of supply are surface water that it obtains from the Brazos River Authority and water from wells. In 1990, Round Rock filed a petition with the Commission requesting the agency to establish just and reasonable rates in place of the rates established in the 1986 contract. The District opposed the petition. The Commission assumed jurisdiction under sections 11.036 and 12.013 of the Texas Water Code. First Hotel Investments Corporation, Highland Management, Inc., Hy–Land Joint Venture and Hy–Land North Joint Venture (collectively, "Hy–Land") intervened in the administrative proceedings. Hy–Land owns and develops property the District serves, and intervened because the District passes through to Hy–Land certain charges called for in the District's contract with Round Rock.

After an eight-day hearing, the Commission issued an order adjusting the contract

---

1. Since this proceeding was filed in 1990, the Texas Water Commission has been abolished and replaced by the Texas Natural Resource Conservation Commission (TNRCC). *See* Act of Aug. 12, 1991, 72nd Leg., 1st C.S., ch. 3, 1991 Tex. Gen.Laws 4, 5. TNRCC has succeeded to all of the statutory rights and responsibilities of the Water Commission. *Id.*

rates, although not in Round Rock's favor. Both the District and Round Rock then sued for judicial review of the Commission's order under section 19 of the Administrative Procedure and Texas Register Act. *See* Act of April 22, 1975, 64th Leg., R.S., ch. 61, § 19, 1975 Gen.Laws 136, 146 (current version at TEX.GOV'T CODE §§ 2001.171–178). The District alleged, among other complaints, that the Commission lacked jurisdiction to adjust the contract rates. Round Rock did not contest the Commission's jurisdiction, but instead asserted that the agency erred in refusing to reopen the record to admit newly available evidence supporting Round Rock's position. The trial court affirmed the Commission's order and only the District appealed.

The court of appeals reversed the trial court's judgment. The court held that sections 11.036 and 12.013 of the Water Code conferred jurisdiction upon the Commission to set rates only at the request of a water *purchaser.* 887 S.W.2d at 72, 76–77. The court also held that the Commission's rate-making authority was limited to cases in which the seller appropriates state water. *Id.* The court reached this result by tracing the long history of the pre-Code versions of these provisions. Acknowledging that the plain language of section 12.013(a) would seem to give the Commission broad, general rate-making authority, 887 S.W.2d at 72, the court nevertheless concluded that the structure of the original statute indicated that the Legislature had intended to vest the Commission with much narrower authority. *Id.* at 77. The Commission and Hy–Land then appealed to this Court. Round Rock, which had previously argued that the Commission had jurisdiction over its petition, did not appeal. Round Rock now maintains that the Commission lacked jurisdiction. The court of appeals' analysis is flawed in several respects.

## II

Section 12.013(a) provides that "[t]he commission shall fix reasonable rates for the furnishing of raw or treated water for any purpose mentioned in Chapter 11 or 12 of this code." TEX.WATER CODE § 12.013(a).

This section is little changed from the source legislation enacted by the 35th Legislature in 1918. That legislation provided that "[t]he said Board shall have power and authority and it shall be its duty to fix reasonable rates for the furnishing of water for the purposes or any purpose mentioned in this Chapter." *See* Act of April 2, 1918, 35th Leg., 4th C.S., ch. 55, § 1, 1918 Gen.Laws 129, 129. In 1977, the Legislature added subsection (d) to section 12.013. It provides, "The commission's jurisdiction under this section relating to incorporated cities, towns, or villages shall be limited to water furnished by such city, town, or village to another political subdivision on a wholesale basis." TEX.WATER CODE § 12.013(d).

Several principles guide our inquiry when we construe a statute. Our ultimate purpose must be to effect the Legislature's intent. *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994). We resort to rules of construction only when the statute in question is ambiguous. *Ex parte Roloff,* 510 S.W.2d 913, 915 (Tex.1974). When the meaning of an existing law is uncertain, the Legislature's later interpretation of it is highly persuasive. *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 274 (1944). In addition, the construction of a statute by an agency charged with its execution is entitled to serious consideration unless the agency's construction is clearly inconsistent with the Legislature's intent. *Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex. 1993); *see also* TEX.GOV'T CODE § 311.023(6).

Applying these rules to section 12.013(a) leads us to conclude that the Legislature did not intend the limitations on the scope of the Commission's wholesale rate-making authority inferred by the court of appeals. The section's antecedent, enacted in the fourth called session of the 35th Legislature, amended Chapter 88 of the general laws adopted in the regular session by adding section 61–A. *See* Act of April 2, 1918, 35th Leg., 4th C.S., ch. 55, § 1, 1918 Tex.Gen. Laws 129, 129 (codified at TEX.WATER CODE § 12.013(a)). The Legislature inserted Section 61–A after several provisions of Chapter 88 which established the right of persons entitled to receive water to petition the

Board of Water Engineers, the Commission's predecessor, for relief if they were denied water by a potential supplier at a just and reasonable price.[2] *See* Act of Mar. 19, 1917, 35th Leg., R.S., ch. 88, §§ 59–61, 1917 Tex. Gen.Laws 211, 226 (codified at TEX.WATER CODE § 11.041).

Although the Legislature's placement of this provision might suggest that the Board's rate-making authority could only be invoked by water purchasers, the only court to address the rights of water suppliers to petition for review under section 61–A of the law enacted by the 35th Legislature reached a different conclusion. *See Knight v. Oldham,* 210 S.W. 567, 568 (Tex.Civ.App.—El Paso 1919, writ ref'd). In *Knight v. Oldham,* the trial court had ruled that a virtually identical 1913 precursor to sections 59–61 of the legislation passed by the 35th Legislature was invalid, in part because the law did not provide for mutuality of remedies. *See id.* The court of appeals acknowledged that the 1913 legislation "was possibly amenable to the criticism, for the reason that *it gave water users the right to apply to the board to adjust the matters complained of here, but made no provision for the delivering company to do so....*" *Id.* (emphasis added). The

court concluded, however, that the enactment of section 61–A by the 35th Legislature had remedied that defect. *Id.*[3]

The conclusion that section 12.013(a) allows a water supplier to petition for review of water rates finds additional support in the long-standing interpretation of the administrative agency responsible for its execution. Section 291.44 of the Commission's administrative rules describes the required "Contents of Pleadings Seeking Review of Rates for Sales of Water under the Texas Water Code, §§ 11.036–11.041 and 12.013." *See* 30 TEX.ADMIN.CODE § 291.44 (West 1995). Subsection (a) of the rule sets out requirements for petitions by water purchasers, while subsection (b) establishes the requirements for petitions by water suppliers. *Id.* A similar rule promulgated by the Commission's predecessor, the Texas Department of Water Resources, has been in place since at least 1978. *See* Permanent Rules of the Texas Department of Water Resources § 156.08.00.003 (1978). Thus, the administrative agency the Legislature entrusted with the responsibility of carrying out the rate-making authority in section 12.013(a) has affirmatively interpreted the law to allow peti-

---

2.  Sections 59–61 of Chapter 88 provided, in part:

    SEC. 59.  If any person entitled to receive or use water from any canal, ditch, flume, lateral, dam, reservoir or lake, or from any conserved or stored supply shall present to the board his petition in writing, showing that the person ... owning or controlling such water has a supply of water not contracted to others and available for his use, and fails or refuses to supply such water to him, or that the price or rental demanded therefor is not reasonable and just, or is discriminatory; or that the complainant is entitled to receive or use such water, and is willing and able to pay a just and reasonable price therefor; ... it shall be the duty of the board to make a preliminary investigation of such complaint and determine whether there is probable ground therefor.  If said board shall determine that no probable ground exists for such complaint, same shall be dismissed, and the deposit may, at the discretion of the board, be returned to the complainant or paid into the State treasury.

    SEC. 60.  If the board shall determine that probable ground exists for such complaint, and it shall enter an order setting said matter for hearing at a time and place to be named therein.... Thereupon it shall be the duty of the

    secretary of the board to transmit a certified copy of the petition of complainant and of the order setting same for hearing ... to the party or parties against whom such complaint is made....

    SEC. 61.  At the time and place stated in such order, the board shall sit to hear such complaint.  It may hear evidence orally or by affidavit in support of or against such complaint, and may hear arguments, and shall have power to adjourn such hearing from time to time and from place to place, and upon completion thereof shall render decision in writing.

3.  The court of appeals in this case cited *Knight v. Oldham* as support for the proposition that the Legislature enacted section 61–A for the sole purpose of making the Board of Water Engineers' rate-making authority explicit. 887 S.W.2d at 75.  Our reading of the opinion, however, shows that the *Knight v. Oldham* court considered the language of the 1913 statute that was the source of sections 59–61 to "clearly and definitely" confer rate-making authority upon the Board.  *Knight v. Oldham,* 210 S.W. at 568.  The importance of section 61–A to the *Knight v. Oldham* court instead was that it supplied a mutuality of remedies that had been previously lacking. *Id.*

tions by water suppliers for almost twenty years.

■ In light of the lack of any language in section 12.013(a) limiting the right to petition the Commission to water purchasers, the construction of the statute in *Knight v. Oldham*, unchallenged until now, and the long-standing administrative interpretation of the provision, we hold that wholesale water suppliers, as well as water purchasers, may seek Commission review of water rates.

### III

■ We also hold that the Commission's rate-making authority under section 12.013(a) is not limited to instances in which the water supplier appropriates state water. The legislative history of section 12.013(d) of the Water Code, coupled with the lack of any limiting language in section 12.013(a), leads us to this conclusion.

Subsection (d) of section 12.013 was added by the Legislature in 1977. Its source, House Bill 1602, initially provided exclusive jurisdiction to the Public Utility Commission to set wholesale water rates in cases in which the water supplier held permits to appropriate public water from five or more reservoirs. Tex.H.B. 1602, 65th Leg., R.S. (1977). According to the bill's sponsor, Representative Blanton, the bill "merely [sought] to move the jurisdiction over these rates from the Water Rights Commission to the Public Utility Commission." *Hearing on Tex.H.B. 1602 Before the House Comm. on Nat.Res.*, 65th Leg., R.S. 1 (Mar. 23, 1977) (testimony of Representative Blanton) (transcript available at the Legislative Reference Library). The original committee substitute for the bill would have "made clear that the Texas Water Rights Commission [a predecessor to the Texas Water Commission] has the authority to fix water rates," but would have limited the Commission's authority over wholesale water rates to instances in which the supplier was an incorporated city holding a permit to appropriate state water. HOUSE COMM. ON NAT.RES., BILL ANALYSIS, Tex.C.S.H.B. 1602, 65th Leg., R.S. (1977). Significantly, the amended committee substitute, the version of the bill ultimately enacted by the Legislature, eliminated this limitation on the Com-

mission's jurisdiction. *See* Act of June 15, 1977, 65th Leg., R.S., ch. 647, 1977 Tex.Gen. Laws 1650 (codified at TEX.WATER CODE § 12.013).

■ The legislative history of House Bill 1602 is telling. The Legislature considered but rejected the very limitation on the Commission's wholesale rate authority that the court of appeals engrafted onto section 12.013(a): the requirement that the water supplier be an appropriator of state water. In the absence of any contrary indication of legislative intent, the courts should decline to infer a limitation in a statute that the Legislature has explicitly rejected. *Transportation Ins. Co. v. Maksyn*, 580 S.W.2d 334, 338 (Tex.1979), citing *Grasso v. Cannon Ball Motor Freight Lines*, 125 Tex. 154, 81 S.W.2d 482 (1935) and *Love v. Wilcox*, 119 Tex. 256, 28 S.W.2d 515, 524 (1930). Further, the bill analysis, as well as statements by the bill's sponsor, show that the legislation clarified, rather than expanded, the Commission's pre-existing authority over water rates. *See* HOUSE COMM. ON NAT.RES., BILL ANALYSIS, Tex.C.S.H.B. 1602, 65th Leg., R.S. (1977) and *Hearing on Tex.H.B. 1602 Before the House Comm. on Nat.Res.*, 65th Leg., R.S. 1 (Mar. 23, 1977) (testimony of Representative Blanton) (transcript available at the Legislative Reference Library). We are therefore persuaded that the Commission's authority under section 12.013(a) is not limited to cases in which the supplier is an appropriator of state water. *See Stanford*, 181 S.W.2d at 274. Because we hold that the Commission had jurisdiction over this proceeding under section 12.013(a) of the Water Code, it is not necessary for us to consider the scope of the agency's authority under any other provision.

### IV

■ Finally, Round Rock raises the additional contention that, if the Commission has statutory authority to review contractual wholesale water rates, that power violates Article I, section 16 of the Texas Constitution, which prohibits laws impairing the obligation of contracts. Our review of the record, however, shows that neither Round Rock nor the District raised this issue in a motion for rehearing at the agency, in the

trial court, or in the court of appeals. The issue is therefore not properly before us. *Dreyer v. Greene,* 871 S.W.2d 697, 698 (Tex. 1993).

## V

In summary, we hold that section 12.013(a) of the Water Code vests the Commission with authority to set wholesale water rates on the petition of a water supplier, regardless of whether the supplier appropriates state water. Accordingly, we reverse the judgment of the court of appeals and remand to that court to allow it to consider other points of error the District raised that the court did not previously consider.